279 So.2d 829 (1973)
Edmond PHELPS, Petitioner,
v.
GUNITE CONSTRUCTION AND RENTALS, INCORPORATED, et al., Respondents.
No. 41626.
Supreme Court of Florida.
June 21, 1973.
*830 Gerald Shapiro, Miami, for petitioner.
Edwin H. Underwood, Jr., and Albert A. Gordon of Underwood, Gillis & Karcher, Miami, for respondents.
DEKLE, Justice.
This cause brings for review by certiorari an order of the Florida Industrial Relations Commission reversing in a 2-1 decision the Judge of Industrial Claims, who determined that claimant sustained an occupational disease known as contact dermatitis causing a 20% permanent partial disability of the body as a whole. We granted certiorari without oral argument. F.A.R. 3.10(e), 32 F.S.A.
Claimant, petitioner herein, is a laborer who worked as a cement machine operator for Respondent Gunite Construction and Rentals, Inc. (hereinafter "Gunite"). During this employment in June 1967, claimant developed a serious rash on various parts of his body. On several occasions, thereafter, claimant mentioned the rash to his foremen, but they said, use vaseline and "you will be all right". Even though this skin condition persisted, claimant worked for Gunite until November 27, 1968. On that date, claimant terminated his employment by advising his foremen that his skin irritation prevented him from continuing his work.
Approximately one year later on November 21, 1969, claimant went to Dr. Cirlin, a dermatologist, complaining about his skin disorder. Dr. Cirlin diagnosed claimant's condition as a form of contact dermatitis, to-wit: cement poisoning. The doctor attributed this disorder to claimant's employment involving contact with cement.
The Judge of Industrial Claims accepted and relied upon the medical testimony of Dr. Cirlin, finding that claimant suffered an occupational disease described as cement poisoning; that this ailment was causally and directly related to his employment with Gunite; and that claimant sustained a 20% loss of wage earning capacity. In addition, the judge adopted Dr. Cirlin's opinion that claimant's condition is subject to recurrence upon future exposures. This latter finding was a crucial factor in the judge's order granting a permanent partial disability of 20% of the body as a whole. Notwithstanding, the Commission in a split-decision reversed, declaring Dr. Cirlin's testimony inconclusive and that claimant did not satisfy his burden of proof for an occupational disease as required by Fla. Stat. § 440.151, F.S.A.
The central issue before us is whether the record contains the quantum of evidence necessary to support the Judge of Industrial Claims' finding that the claimant sustained a compensable occupational disease. In this connection, we recognize as we did in Norman v. Morrison Food Services, 245 So.2d 234 (Fla. 1971), that Fla. Stat. § 440.151, F.S.A., requires a greater degree of proof to sustain a compensation order for an occupational disease in comparison to other types of workmen's compensation claims.
More specifically, in Brooks v. State Dept. of Transportation, 255 So.2d 260 (Fla. 1971), we stated in concise language the criteria for establishing an occupational disease by saying claimant must prove: (p. 262)
"(1) that his disease is caused by his employment;
"(2) that his employment shows a peculiar hazard of such disease in excess of that posed by other forms of employment; and,
"(3) that the disorder is not a common and ordinary disease of life to which the general public is exposed." (emphasis added)
*831 The Commission's majority opinion based its reversal on the ground that claimant did not satisfy its burden to prove an occupational disease. In particular, the majority opinion found no evidence establishing a causal connection between claimant's employment and his cement poisoning. According to the majority, Dr. Cirlin's finding of causation was inconclusive for two reasons. First, Dr. Cirlin noted that once a person removes himself from contact with the offending substance, the dermatitis will clear up. In this context, Dr. Cirlin thought (during his examination) that claimant's present employment involved contact with cement. But claimant had actually terminated his employment at Gunite almost one year prior to Dr. Cirlin's examination, and his subsequent jobs did not include exposure to cement. Admittedly, Dr. Cirlin was mistaken as to when claimant quit his job as a cement machine operator. Even so, his medical opinion cannot be considered inconclusive due to this misunderstanding. We say this because his opinion is based upon other evidence. Upon learning claimant had discontinued his cement machine duties one year earlier, Dr. Cirlin did not alter his medical opinion. In fact, Dr. Cirlin testified that cement poisoning can linger even though an affected person removes himself from cement. He also gave claimant a patch test which indicated a 4-plus positive reaction to cement (a 4-plus reaction is the highest sensitivity). These additional factors support Dr. Cirlin's opinion attributing claimant's cement poisoning to his employment while operating a cement machine.
Next, the Commission found Dr. Cirlin's testimony inconclusive because he had said claimant recovered completely from the cement poisoning as of January 2, 1970, whereas the consulting dermatologist, Dr. Jeruss, based upon his examination opined that claimant had neurodermatitis on January 5, 1970, or three days later. The Commission necessarily overlooked the fact that Dr. Jeruss' diagnosis of neurodermatitis is not the same condition, i.e., contact dermatitis, treated by Dr. Cirlin. The evidence demonstrates that the diagnosis made by Dr. Cirlin and Dr. Jeruss pertain to entirely different diseases. Inasmuch as Dr. Jeruss said that neurodermatitis was not related to cement poisoning, the neurodermatitis must have resulted from some other unconnected disease. Therefore, the majority opinion erred in saying Dr. Jeruss' testimony rendered Dr. Cirlin's opinion inconclusive. The testimony by Dr. Cirlin is positive evidence, and Dr. Jeruss' opinion relating to a completely separate disease is not even evidence to the contrary.
Having concluded that Dr. Cirlin's testimony is positive evidence demonstrating a causal connection between the employee's cement poisoning and cement work, we now consider the other elements of a compensable occupational disease, to-wit: employment concerning a particular hazard and whether it is a common disease of the general public. It is evident from a reading of the record that claimant's job at Gunite created a special and peculiar hazard to cement which is not found in other forms of employment. Before working for Gunite, claimant had not suffered from any type of skin rash. However, his duties on each work day at Gunite required constant and continual contact with cement. These duties included the opening of cement bags, dumping cement into the mixer and operating a special hose which discharged liquid cement.
As to the last element, the evidence demonstrating the existence of a disease to which the general public is not usually susceptible is apparent from Dr. Cirlin's testimony. As pointed out earlier, Dr. Cirlin took a patch test. The results of this test disclosed the presence of potassium dichromate and a 4-plus reaction to cement. This evidence coupled with his duties as a cement machine operator requiring his day by day contact with cement, which is uncommon to the members of the general public, constitutes the requisite evidence proving that claimant sustained a far *832 greater exposure to cement during the course of his employment at Gunite in comparison to the hazards confronting the public generally.
In reaching this result, we are not unmindful of the employer/carrier's argument attacking the validity of Dr. Cirlin's patch test. The employer/carrier refers us to Dr. Cirlin's testimony indicating that he did not know whether the cement used in the patch test came from Gunite Construction and Rentals, Inc., or his own laboratory. The employer/carrier then asserts that since there is no evidence pinpointing the origin of the cement used in the patch test, Dr. Cirlin's opinion is not competent substantial evidence. We cannot agree because there is no evidence indicating a material distinction in these allegedly different cements as applied to this claimant.
The remaining questions for our determination concern the sufficiency and timeliness of the notice of an occupational disease given by the claimant to his employer. On November 27, 1968, claimant terminated his employment with Gunite by informing his supervisor that his skin condition precluded him from performing his prescribed duties. This act by the claimant on November 27, 1968, notifying his supervisor constitutes sufficient notice to his employer,[1] and since the notice occurred on the date claimant became disabled, incapacitated or unable to work at Gunite, it was timely.[2]
Accordingly, the writ of certiorari is granted and order of the Industrial Relations Commission is reversed with instructions to reinstate the order entered by the Judge of Industrial Claims.
It is so ordered.
CARLTON, C.J., and ROBERTS, ERVIN and ADKINS, JJ., concur.
NOTES
[1] Hester v. Westchester General Hospital, 260 So.2d 505 (Fla. 1972).
[2] Fla. Stat. § 440.15(3) and (7), F.S.A.; Wolfe v. Neal, 156 So.2d 513 (Fla. 1963).