415 So.2d 1277 (1982)
Ada RHANEY, Appellant,
v.
DOBBS HOUSE, INC./Squibb Corporation and Travelers Insurance Company, Appellees.
No. AC-319.
District Court of Appeal of Florida, First District.
April 5, 1982.
On Rehearing June 16, 1982.
Rehearing Denied July 22, 1982.
*1278 Richard A. Sadow of Sadow, Lynne & Gonzalez, North Miami, for appellant.
H. George Kagan of Miller, Hodges & Kagan, Miami, for appellees.
THOMPSON, Judge.
The claimant challenges a workers' compensation order, contending that the deputy commissioner (deputy) erred in calculating her average weekly wage (AWW) and improperly made a finding as to permanent impairment. Additionally, claimant challenges the constitutionality of Section 440.15(3)(a)3, Florida Statutes (1979).
The claimant, a cook for Dobbs House at the Miami International Airport, suffered a compensable injury to her right hand on October 21, 1979. In addition to her hourly wage, Dobbs provided claimant with uniforms valued at $1.59 per week. After a 45-day probationary period which ran from the beginning of employment, Dobbs provided its employees with a parking decal which allowed them to park in the airport lot at no charge to the employees. The parking fee, established by the Dade County Aviation Department, was valued at $1.15 per week. Additionally, Dobbs' employees were provided with a 25 cent meal allowance which permitted them to eat at least $2.00 worth of the posted price of foods in the cafeteria where Dobbs' employees and airport personnel ate.
The claimant argues that the deputy erred in calculating her AWW because he did not include the value of the uniforms or the value of the parking and because he valued the meals at only 25 cents. We agree.
In calculating claimant's AWW, the deputy denied inclusion of aprons furnished claimant, reasoning that aprons are not uniforms. However, the deputy made no mention of the includability of the uniforms furnished claimant by Dobbs. Since claimant clearly requested inclusion of the uniforms in her AWW and submitted evidence as to their value, it was error for the deputy to fail to include the value of the uniforms. Torres v. Eden Roc Hotel, 238 So.2d 639 (Fla. 1970).
The deputy also did not include the value of the parking in calculating claimant's AWW. The parking was an economic benefit to claimant and should have been included in her AWW.
Based on the rationale of Bienvenido v. Fontainebleau Hotel, 128 So.2d 1 (Fla. 1961), the deputy included the meals in claimant's AWW at a value of 25 cents each, instead of at the $12.50 weekly value requested by claimant. Under the circumstances, any "agreement" between claimant and Dobbs concerning the 25 cent meal allowance is not binding as far as the calculation of her AWW is concerned. The record indicates that the meals cost Dobbs more than the 25 cent meal allowance. Additionally, there is competent substantial evidence that Dobbs knowingly permitted its employees to regularly eat over $2.00 per meal without charge. Accordingly, the deputy erred in including only 25 cents per meal in claimant's AWW. The value of the meals should have been determined in accordance with the Internal Revenue Service Regulations test of the fair market value of the meals. See Spencer v. Chai Convalescent Home, Inc., 9 FCR 214 (1975).
The claimant also argues that the deputy's determination that she did not sustain a permanent impairment was premature and prejudicial to her since she had not yet claimed wage loss or impairment benefits. However, we find that the issue of claimant's permanent impairment was ripe for adjudication and was therefore properly determined by the deputy. The claimant clearly alleged that she had a 5% to 10% permanent impairment of the hand. Furthermore, claimant elicited medical testimony on the issue of her permanent impairment. *1279 Accordingly, the claimant's argument on this point is without merit.
Claimant's remaining argument concerns the constitutionality of the requirement found in Section 440.15(3)(a)3, Florida Statutes (1979) that the AMA Guide be used to determine impairment until such time as a permanent schedule is adopted. However, we find that claimant lacks standing to challenge the constitutionality of this section. There is no evidence that claimant is not permanently impaired under the AMA Guide but is permanently impaired under some other standard. Accordingly, claimant has not shown that she has been harmed by this section. Furthermore, claimant failed to elicit testimony from the doctors regarding what standard they used in determining whether claimant was permanently impaired. We therefore do not reach this issue raised by claimant.
In conclusion, that portion of the deputy's order concerning claimant's AWW is reversed and remanded for correction of the AWW in conformity with this opinion.
MILLS and WENTWORTH, JJ., concur.

ON PETITION FOR REHEARING
THOMPSON, Judge.
The claimant filed a motion for rehearing concerning her challenge to the constitutionality of § 440.15(3)(a)3., Fla. Stat. (1979) which directed the use of the Guides to the Evaluation of Permanent Impairment, copyright 1977, 1971 by the American Medical Association (the AMA Guides) as a temporary schedule for the determination of permanent impairment pending the adoption, by rule, of a permanent schedule. Claimant also asked the court to reconsider the denial of her motion for appellate attorney's fees. We grant rehearing.
Section 440.15(3)(a)3. provides that "[i]n order to reduce litigation and establish more certainty and uniformity in the rating of permanent impairment, the division shall establish and use a schedule for determining the existence and degree of permanent impairment based upon medically or scientifically demonstrable findings." It thereafter adopts the AMA Guides as a temporary schedule and mandates its use for that purpose. There is no question but what the legislature can enact reasonable guides and rules and can delegate authority to the appropriate agency to establish by rule reasonable guides or schedules to assure uniformity throughout the state. The Department of Revenue has long been authorized to establish and promulgate standards of value to be used by tax assessors of all counties of the state in order that there be some uniformity of taxation among the counties. The legislature clearly had the right to delegate to the Division of Workers' Compensation (the Division) the right to establish a reasonable schedule for the purpose of determining both the existence and degree of permanent impairment and, by the same token, it had the right to establish the AMA Guides as a temporary schedule pending the adoption of a permanent schedule by the Division.
Although the provisions of § 440.15(3)(a)3. are not unconstitutional per se, they could be unconstitutional in their application if this section were interpreted to mean that there could be no permanent impairment unless a medical doctor testified from the AMA Guides as to a certain percentage of permanent impairment set forth therein. However, the section should not be interpreted in that fashion. If properly interpreted and applied, the section is constitutional.
As there are certain injuries and conditions that result in a permanent impairment which are not contained in the AMA Guides, neither the existence nor percentage of permanent impairment for such injuries or conditions can be obtained from the AMA Guides. Obviously, a claimant should not and cannot suffer the consequences of such omissions in the AMA Guides. Under such circumstances the permanent impairment can be proved by qualified expert testimony based on the training, experience, and expertise of the witness or on other accepted medical guides or schedules prepared by specialist groups or associations *1280 such as the Academy of Orthopedic Surgeons. The section under attack does not even require the testimony of a medical doctor using the AMA Guides to establish the existence of some permanent impairment. In certain circumstances, the existence of some permanent impairment based upon medically or scientifically demonstrable findings can be determined by the deputy's observation of the claimant. If the claimant has lost an arm or a leg for example, he has obviously sustained a permanent impairment which is scientifically demonstrable to the deputy by his own observation. However, all objective or demonstrable findings are clearly not evidence of a permanent impairment. A bruise, a black eye, a swollen sprained ankle, and other swelling are all objective demonstrable findings but are generally, if not always, temporary conditions resulting in no permanent impairment. If the claimant cannot demonstrate some actual permanent impairment that can be observed by the deputy, then lay testimony or observation by the deputy, standing alone, is not sufficient to establish any permanent impairment if the purpose of the language in § 440.15(3)(a)3. is to be given any force and effect. Applied properly, we find § 440.15(3)(a)3. constitutional.
We are disturbed that the Division has apparently ignored the 1979 legislative mandate to prepare a permanent schedule for determining the existence and degree of permanent impairment based upon medically or scientifically demonstrable findings. Since the latest revisions to the AMA Guides specified as those to be used as the temporary schedule were copyrighted in 1971 and 1977, the material therein is five to 10 years old and, in some cases, may even be obsolete. The AMA Guides are also obviously incomplete and do not cover a number of conditions or injuries that result in permanent impairment. The legislature has directed that the Division establish a permanent schedule and the Division should and must obey this mandate. The legislative requirement of a schedule has affected the substantive rights of both employer-carriers and claimants, and they are entitled to a current and complete schedule as directed by the legislature. The Division has made no progress on this matter in approximately three years. The continued use of a temporary, incomplete, and out-of-date schedule could result in the court's invalidating its use.
Claimant also seeks an award of attorney's fees for appellate representation. Unfortunately, this court is without authority or jurisdiction to award such fees in the instant case since the accident occurred after the effective date of the 1979 amendments and before the 1980 amendments to § 440.34, Fla. Stat. See Lehigh Corp. v. Byrd, 397 So.2d 1202 (Fla. 1st DCA 1981). We remand without prejudice to any further proceedings consistent with this opinion.
MILLS and WENTWORTH, JJ., concur.