443 So.2d 1007 (1983)
Patrick Thomas TRINDADE, Appellant,
v.
ABBEY ROAD BEEF 'N BOOZE, American Mutual Insurance Company, and Division of Workers' Compensation, Dept. of Labor and Employment Security, Appellees.
No. AP-254.
District Court of Appeal of Florida, First District.
December 1, 1983.
*1008 Richard A. Kupfer of Cone, Wagner, Nugent, Johnson, Hazouri & Roth, P.A., West Palm Beach, for appellant.
Keith R. Pallo of Adams, Coogler, Watson & Merkel, West Palm Beach, for appellees, Abbey Road Beef 'N Booze and American Mut. Ins. Co.
Dan F. Turnbull, Asst. Gen. Counsel, State Dept. of Labor and Employment Sec., Tallahassee, for appellee, Div. of Workers' Compensation.

EN BANC OPINION
PER CURIAM.
On its own motion, the court voted to hear and determine this worker's compensation appeal en banc, under Rule 9.331(a) and (b), Florida Rules of Appellate Procedure, because of apparent conflict between the proposed decision and opinion of the regular three-judge panel, and prior decisions of this court.[1] The proposed opinion (to which a majority of the members of the court sitting en banc concur as to the result) has been withdrawn, and the following is adopted as the decision and opinion of the court.
This is an appeal from an order of the deputy commissioner (DC) denying wage-loss benefits upon a finding that the claimant had not sustained a permanent impairment under the American Medical Association's Guides to the Evaluation of Permanent Impairment (1977) ("AMA Guides"). The DC relied upon our decision in Mathis v. Kelly Construction Company, 417 So.2d 740 (Fla. 1st DCA 1982), to deny wage loss benefits, since the medical testimony reflected that Trindade had no loss of range of motion in his knee, and thus had no permanent impairment assignable under the AMA Guides.
Trindade concedes that Section 440.15(3)(a)3., Florida Statutes (1979), as interpreted by this court in Mathis, purports to require the use of the AMA Guides to determine the existence and degree of permanent *1009 impairment. However, Trindade argues that although the AMA Guides "cover" knee impairments, the Guides do not provide a permanent impairment rating for his particular type of knee injury, and he therefore should not be denied wage loss benefits. Trindade further urges that to the extent it would appear to preclude his recovery of benefits, this court should reconsider Mathis. We agree that since Trindade's knee injury is one involving no loss of range of motion, no permanent impairment rating is ascertainable by the use of the Guides. Nevertheless, contrary to the result apparently dictated by our Mathis decision, we find that Trindade has sustained a permanent impairment and is entitled to wage loss benefits. We therefore reverse the deputy commissioner's order.
Trindade suffered a knee injury in an accident arising out of and in the course of employment on November 21, 1979. The treating orthopedic surgeon, Dr. Zeide, rated Trindade's knee instability as resulting in a five to ten percent permanent impairment based on the American Academy of Orthopedic Surgery Guides. His diagnosis was that Trindade had torn cartilage and torn anterior cruciate ligament, causing his knee to buckle on occasion, and recommended a knee cage to limit the motion of his knee. Dr. Zeide testified that he was unable to give a permanent impairment rating to the injury based on the AMA Guides as they dealt only with loss of range of motion in rating knee disability, and Trindade's knee had instability due to excessive range of motion.
In Mathis, we determined that Section 440.15(3)(a)3. survived a due process attack and was constitutional as applied because the particular injury, a knee joint injury, was "covered" by the AMA Guides, but since his knee injury did not involve loss of range of motion, Mathis could not be assigned a permanent impairment rating under the Guides. Whether the result in Mathis might have been different had the court been faced with the same compelling facts as in this case (the nature of Mathis' knee joint injury is not described in the opinion), or had the court been privileged to hear the same arguments as presented in this case (including those presented in the briefs and oral argument of the Workers' Compensation Division), we are unable to state. Be that as it may, the Mathis opinion did not fully address the application and effect of the statute in cases (such as the one before us) in which the injury to a part of the body nominally covered by the Guides results in permanent impairment which manifests itself in a way other than by loss of range of motion.
Our efforts to give the Guides exclusive effect, and by doing so to facilitate the goal of uniformity (in determining the existence of and in rating permanent impairment) expressly sought by the enactment of Section 440.15(3)(a)3., have been undertaken in anticipation of the adoption by the Division of a more comprehensive schedule for determining the existence and degree of permanent impairment as mandated by the same statute. See, Decor Painting & Iowa Mutual Insurance Co. v. Rohn, 401 So.2d 899 (Fla. 1st DCA 1981); Mathis v. Kelly Construction Company, 417 So.2d 740 (Fla. 1st DCA 1982); Jones Mahoney Corporation v. Hutto, 421 So.2d 703 (Fla. 1st DCA 1982); Morrison & Knudsen/American, etc. v. Scott, 423 So.2d 463 (Fla. 1st DCA 1982); Paradise Fruit Company v. Floyd, 425 So.2d 9 (Fla. 1st DCA 1982); Refrigerated Transport Company v. Edmond, 428 So.2d 338 (Fla. 1st DCA 1983); and Cabrera v. Universal Trusses, Inc., 429 So.2d 768 (Fla. 1st DCA 1983). More than four years have now passed since the legislature imposed upon the Division the duty of establishing such a comprehensive guide, and mandated the use of the AMA Guides as a temporary schedule. In the meantime, it has become increasingly difficult (as attested by the opinions of this court reflecting the actual experience of the litigants, their counsel, and the deputy commissioners) to reconcile the limited scope and coverage of the Guides with the broader commas of Chapter 440 itself, which has as its fundamental purpose the *1010 compensation (as well as rehabilitation) of injured workers.[2]
Accordingly, although our decisions have reflected our view that the legislature's directive to utilize the Guides is mandatory, and that they must be applied when the injury in question is "covered" therein, see, e.g., Paradise Fruit Company v. Floyd, supra, we also recognized that certain injuries and conditions that are medically determined to result in permanent impairment are "not covered" in the Guides, and when that is the case the claimant may not be made to suffer the consequences of such omissions. Rhaney v. Dobbs House, Inc., 415 So.2d 1277 (Fla. 1st DCA 1982). In Rhaney, we held that "[u]nder such circumstances the permanent impairment can be proved by qualified expert testimony based on the training, experience, and expertise of the witness or on other accepted medical guides or schedules prepared by specialist groups or associations such as the Academy of Orthopedic Surgeons." Id. at 1279-80. Subsequent cases have reflected and extended the rationale of Rhaney so as to find entitlement to benefits with respect to injuries which we have determined to be "not covered" by the Guides. Quality Petroleum Corporation v. MIHM, 424 So.2d 112 (Fla. 1st DCA 1982) (injury to right leg  soft tissue scarring, impairment of circulation, probability of recurring infection, recurring swelling and pain); Florida Sheriffs Youth Fund v. Harrell, 438 So.2d 450 (Fla. 1st DCA 1983) (soft tissue injury in sacroiliac  spasm, impairment of capability because of sensitivity to stress, bending, lifting, prolonged sitting, etc.).
If our former approach as indicated in Mathis and other cases was justified by the "temporary" status given to the Guides by the legislative enactment, it no longer is. The Division has informed us, both in its brief and in oral argument before this court, that it not only has been unable to produce a comprehensive schedule as mandated by the statute: It expresses doubt that a suitable schedule can be prepared, and it is anticipated that no such schedule will be forthcoming. Instead, the Division informs us that it advocates the continued use of the AMA Guides, to the extent applicable, and that it proposes to adopt the revised and up-dated version of the Guides expected to be published in 1984.
It may be observed that our experience in trying to formulate a standard based on the "covered" or "not covered" dichotomy for determining when the Guides permit a finding of permanent impairment, and when they do not, offers little hope for a workable solution. One fundamental reason for this is that the Guides apparently were never intended to be used in this manner. Thus, it is unrealistic for us to find that certain types of "injuries" are "not covered" by the Guides (and therefore other medical standards can be used) when, in actuality, the Guides (Chapter I particularly) do not generally speak in terms of "injuries," to the body and its extremities but speak primarily in terms of the consequences or results of injury. As already indicated above, for the most part Chapter I of the Guides and the tables therein concern themselves with a single type of result  loss of range of motion. Other chapters, such as those dealing with peripheral spinal nerves, respiratory and cardiovascular systems, mental illness, etc., of course use other appropriate criteria.
Although a contrary conclusion is implicit in Mathis and other decisions, there appear to be valid arguments against the motion that the legislature, simply by mandating use of the Guides on a temporary basis, intended to establish a single "range of motion" test of permanent impairment. If this were the case, then our Quality Petroleum and Harrell decisions were incorrectly decided. Significantly, by the language of the statute the Division is not restricted to the adoption of a schedule based upon a single "range of motion" *1011 criteria, but is directed to adopt a schedule for determining the existence and degree of permanent impairment "based upon medically or scientifically demonstrable findings." Further, the schedule shall be based on "generally accepted medical standards for determining impairment," and "may incorporate all or part of any one or more generally accepted schedules used for such purpose, ... ." Section 440.15(3)(a)3.[3] It is evident that interpretation of the directive to use the Guides as the adoption of a single "range of motion" criteria, would have the anomalous effect of requiring the application of that single standard until such time as the Division adopts a different schedule, but not after.
We have the obligation of interpreting a statute in a manner consistent with the legislative intent, to the extent it is ascertainable and can lawfully be implemented. We have the further obligation of applying an interpretation upholding the constitutionality of a statute, if such an interpretation is permissible. Department of Insurance, State of Florida v. Southeast Volusia Hospital District, 438 So.2d 815 (Fla. 1983).
With the above considerations in mind, we return to the specific issue before us, which is: Whether we shall recognize the so-called "exclusivity" of the Guides with respect to injuries which, although "covered" in the Guides, do so only to the extent of providing a permanent impairment rating for loss of range of motion, where the existence of permanent impairment other than loss of range of motion has been made to appear by evidence meeting generally acceptable medical standards for determining impairment? The answer to this question is clear, and was forecast by our decisions in Rhaney, Paradise Fruit Company, and Farrell, supra.
First, as a practical matter, over four years of experience have shown the futility of attempting to view the Guides as a comprehensive, all-inclusive schedule of permanent impairments. This valuable treatise, viewed by the Division as the "best available," is nevertheless  according to much credible medical testimony reflected in the cases coming before us  incomplete and unsuited to the determination of permanent impairment resulting from certain types of injuries. See, Rhaney, Quality Petroleum, Harrell, supra. The Division apparently agrees with this assessment. Its brief labels it "an absurdity" to require the use of the Guides where the injury is not covered by the Guides, and urges also that "coverage" must not be governed by whether the Guides cover "a particular area of the body,"[4] but whether the Guides cover conditions created by the injury itself.
The Division rejects outright appellee's implied assertion that the only way to obtain an anatomic impairment rating is through the Guides. Division's Brief, page 10. We concur. As the Division indicates, this court in Quality Petroleum expressed the same view, although in different language, by holding that where the evidence establishes permanent physical impairment, "but that impairment is not addressed by the ... [AMA] Guides, it is not error for the deputy to rely on medical testimony of permanent impairment based upon other generally accepted medical standards." *1012 424 So.2d at 113-114. See, also, Refrigerated Transport Co. v. Edmond, supra, which denied wage loss benefits because there was an absence of competent medical testimony of permanent impairment "based on the AMA Guides or other scientifically demonstrable findings, ... ." (emphasis supplied). 428 So.2d at 340.
Finally, but not least importantly, to interpret and apply the statute so as to find one employee  with permanent impairment manifested by restrictions in the range of motion of his body or extremities  eligible for compensation for his loss of earning ability, but to deny such eligibility to another employee  whose non-range of motion permanent impairment has no less effect on his earning ability  would be violative of due process. We are unable to imagine how such a statute would bear any reasonable relationship to permissible legislative objectives, nor how it could be other than discriminatory, arbitrary and oppressive. See, Carr v. Central Florida Aluminum Products, 402 So.2d 565 (Fla. 1st DCA 1981); Fourteenth Amendment, Section 1, United States Constitution; Article I, Section 9, Florida Constitution. Further, since the sine qua non of the wage loss concept is economic loss,[5] a classification which distinguishes between eligible and ineligible claimants on a basis which bears no reasonable relationship to their respective economic loss is violative of equal protection and access to the courts provisions of the Federal and State Constitutions. Fourteenth Amendment, Section 1, United States Constitution; Article I, Sections 2, 21, Florida Constitution.
We therefore hold that for purposes of determining eligibility for wage loss benefits in accordance with Section 440.15(3)(a) and (b), the existence and degree of permanent impairment resulting from injury shall be determined pursuant to the Guides, unless such permanent impairment cannot reasonably be determined under the criteria utilized in the Guides, in which event such permanent impairment may be established under other generally accepted medical criteria for determining impairment.
Since the conditions causing Trindade's permanent impairment (instability of the knee joint  excessive range of motion) are not treated in the Guides, it is impossible to determine the existence or degree of impairment from the Guides; therefore, other generally accepted medical standards may properly be used. Quality Petroleum, supra. We recede from Mathis and any other decisions to the extent they would dictate a contrary result.
Finally, our decision today does not require that we recede from or modify Jamar Sportswear, Morrison & Knudsen, Decor Painting, supra (footnote 1), or related cases, except to the extent that the restrictive "exclusivity" attributed to the Guides by those cases would be contrary to the rule we have announced here. The Guides, where applicable, shall be used as the primary rating schedule, but shall not be used to deny benefits simply because the Guides do not make provision for the conditions causing the impairment.
One additional matter requires attention. The deputy commissioner found, in accordance with the medical testimony before him, that the knee cage prescribed for Trindade's condition did not qualify as a "prosthesis" so as to entitle him to a 50% impairment rating under the Guides.[6] The original panel's proposed decision did not disturb this ruling. Our determination to decide the case en banc was based upon the Mathis conflict, rather than this issue. However, once en banc consideration is properly undertaken, the court will ordinarily decide all the issues in the case. The division urges that the knee cage, although technically classified as an "orthosis" by Dr. Zeide, nevertheless meets the requirements of a "prosthesis" as the term is interpreted by the division in connection with other statutory provisions (Sections *1013 440.19(2)(b), 440.02(6)). The division argues further (as does Trindade) that a definition restricting the term to "artificial limbs" would be inapposite in the context in which it appears in the Guides (see footnote 6, supra).[7] We tend to agree. Therefore, on remand, the deputy commissioner is directed to receive further evidence with respect to the knee cage, including testimony of expert medical witnesses furnished by the division, to determine whether a disability rating under the "prosthesis ... required" provision of the Guides is appropriate.
The order appealed is reversed and the cause is remanded for entry of an order finding permanent impairment, and for further order with respect to the degree of impairment, and award of benefits, consistent with this opinion.
ERVIN, C.J., and MILLS, ROBERT P. SMITH, Jr., BOOTH, LARRY G. SMITH, SHIVERS, WENTWORTH, JOANOS, THOMPSON, WIGGINTON, NIMMONS and ZEHMER, JJ., concur.
NOTES
[1] In our order informing the parties of our decision to consider this case en banc, we scheduled oral argument, recognized the Division of Workers' Compensation, Department of Labor and Employment Security as a party, directed the filing of a brief by the Division, and invited additional briefs by the other parties addressing the following and any related questions:

1. Should the court recede from Mathis v. Kelly Construction Co., 417 So.2d 740 (Fla. 1st DCA 1982) and similar decisions?
2. If so, what effect if any would that action have on Jamar Sportswear, Inc. v. Miller, 413 So.2d 811 (Fla. 1st DCA 1982), Morrison & Knudsen/American Bridge Division v. Scott, 423 So.2d 463 (Fla. 1st DCA 1982), and Decor Painting, et al. v. Rohn, 401 So.2d 899 (Fla. 1st DCA 1981)?
3. What is the effect, in terms of possible exclusivity and irrebuttability, of section 440.15(3)(a)3. prescribing the temporary use of the AMA Guides to the Evaluation of Permanent Impairment (1977)?
[2] "The workers' compensation system was instituted to compensate a worker for his inability (total or partial) to earn as much after an injury as he had earned before." Sadowski, Herzog, Butler & Gokel, The 1979 Workers' Compensation Reform: Back to Basics, 7 Fla.St.U.L.Rev. 641, 649 (1979).
[3] Under a schedule fully complying with these legislative standards, the claimant in Mathis, supra, could easily have qualified for wage loss benefits, since the medical evidence established a 30% permanent impairment rating under the Guides of the American Academy of Orthopedic Surgeons.
[4] Our Mathis and perhaps other decisions seem to have adopted this inappropriate "area of the body" approach to the "coverage" issue. Of course, not all "Guides" cases denying benefits do so on this narrow ground. For example, in Jones Mahoney, supra, there was an apparent absence of proof of permanent impairment under other medically acceptable (but non-Guides) criteria. Compare, also, Racz v. Chennault, Inc., 418 So.2d 413 (Fla. 1st DCA 1982), Deinema v. Pierpoint Condominiums, 415 So.2d 811 (Fla. 1st DCA 1982), and Cabrera, supra, in which non-use of the Guides precluded an award of benefits, but it was not fatal to the claim, and the cases were remanded for further evidence as to an impairment rating based on the Guides.
[5] Id., 7 Fla.St.L.Rev. 641, 652, 681, 684 (1979).
[6] "If a prosthesis is required for knee stability, there is 50% impairment of the lower extremity although there might be full range of motion of the knee joint." Guides, at page 33.
[7] Dorland's Illustrated Medical Dictionary, Twenty-Fourth Edition (1965), includes the following definition of "prosthesis": "2. An artificial substitute for a missing part, such as an eye, leg, or denture; the term is also applied to any device by which performance of a natural function is aided or augmented, such as a hearing aid or eyeglasses." (emphasis supplied).