PER CURIAM.
This cause is before us on appeal from an order of the deputy commissioner in a workers’ compensation proceeding awarding temporary partial disability compensation and wage-loss benefits. At issue are the deputy’s award of wage-loss benefits without a finding of permanent anatomic impairment under the AMA Guides, his award of temporary partial disability compensation from June 12, 1980 to March 16, 1982, and his finding that claimant could have earned $110 per week during that period. We affirm in part, reverse in part, and remand for reconsideration of the impairment issue.
William Kitchen, a 29-year-old manual laborer with a tenth-grade education, injured his low back in a compensable accident on February 18, 1980. The employer/carrier terminated temporary total disability benefits on June 12, 1980, due to claimant’s failure to keep an appointment with a neurosurgeon, arranged for him by the employer/carrier. An appointment was subsequently arranged with Dr. Martinez, a neurologist, which claimant also failed to keep. He was thereafter examined by Dr. Martinez, who found that as of September 22, 1980, claimant had reached maximum medical improvement, that he had no evidence of any neurologic impairment, and that he could return to work. Dr. Martinez saw claimant again in November, 1980 and February, 1981, without changing his previous opinions regarding claimant’s condition or ability to work.
After some delay due to his failure to keep scheduled appointments, claimant underwent testing in March, 1982, requiring hospitalization. He was examined by Dr. John C. Baker, an orthopedic surgeon, who determined that claimant had reached maximum medical improvement on June 2, 1982, and that he did not have a rating in accordance with the AMA Guides, but that he did have a disability of approximately five percent of the whole man, based on the Academy of Orthopedic Surgeons Guide. The employer/carrier provided temporary total disability benefits from March 16, 1982 to June 28, 1982, during which time claimant missed numerous therapy appointments.
At the hearing on August 4, 1982, claimant asserted, among other claims, entitlement to temporary total disability compensation from the date of the accident until June 2, 1982, and wage-loss benefits thereafter. The employer/carrier asserted that claimant was not entitled to temporary total disability compensation between June 12, 1980 and March 16, 1982, due to his failure to attend medical examinations or to seek employment, and that claimant did not have a permanent impairment rating in accordance with the AMA Guides, a prerequisite for entitlement to wage-loss benefits.
In his order, the deputy found that claimant had not made a good-faith job search from September 22, 1980, when he was told he could return to gainful employment, until August 5, 1981, when he was first seen by Dr. Baker. The deputy determined that claimant was not entitled to temporary total disability benefits from June 12, 1980 to March 16, 1982, due to his failure to cooperate with his medical care and treatment, but awarded claimant temporary partial disability benefits for that period, based upon a deemed earning capacity of $110 per week. The deputy also found that claimant had a permanent anatomic impairment of five percent of the whole person, based upon Dr. Baker’s testimony, and that he had attempted to seek employment since being told to return to work by Dr. Baker, awarding wage-loss benefits from June 2, 1982.
From June 12, 1980 to September 22, 1980, when Dr. Martinez told claimant he could return to work, claimant was arguably temporarily totally disabled. However, the deputy found that claimant was not entitled to temporary total disability *4 benefits during this period, because he had failed to cooperate with his medical care and treatment. The deputy further found that claimant was not entitled to temporary total disability benefits from September 22, 1980 to August 5, 1981, when he was first seen by Dr. Baker, because he had been told he could return to gainful employment and had not made a good-faith job search, and also because he had failed to cooperate in his medical treatment. The deputy found claimant not entitled to temporary total disability benefits from August 5, 1981 to March 16, 1982, again because claimant failed to cooperate with his medical care and treatment.
These findings are supported by competent, substantial evidence in the record. However, the record does not support, nor does logic explain, the deputy’s inconsistent award of temporary partial disability benefits during this period and his determination that claimant was able to earn $110 per week during that time. Although we acknowledge the deputy’s authority to deny temporary disability benefits based on claimant’s failure to cooperate in his medical treatment, Lobnitz v. Orange Memorial Hospital, 126 So.2d 739 (Fla.1961), once he has denied temporary total disability benefits based on this rationale, it is illogical to subsequently award temporary partial disability benefits for the same time periods. Claimant’s failure to keep scheduled medical appointments, found by the deputy to be unexcused and a basis for denial of total disability benefits, also precludes an award of partial benefits for the same time period.
The deputy’s award of temporary partial disability benefits between September 22,1980 and August 5,1981 was also in error because the deputy found that claimant had been told he could return to gainful employment and had not made a good-faith job search during that period. See Holiday Care Center v. Scriven, 418 So.2d 322 (Fla. 1st DCA 1982), and Regency Inn v. Johnson, 422 So.2d 870 (Fla. 1st DCA 1982), pet. for rev. denied, 431 So.2d 989 (Fla.1983). Where an injured worker has recovered the ability to work but is not yet at maximum medical improvement, he is entitled to temporary partial disability benefits, but only as established by a conscientious work search. As we stated in Holiday Care Center v. Scriven, 418 So.2d at 324:
To search for work conscientiously and effectively is the chapter 440 obligation of any injured and unemployed worker not physically disabled to work. That is the clear mandate of this Court’s cited decisions refusing to excuse a worker’s failure to search, or his inadequate search, due to subjective but medically unverifiable claims of inability to work or to search.... [T]he work search is the linchpin of any effort to return to gainful work from a condition disabling work, and is therefore the predicate for any claim based on continued disability to work as gainfully as before....
In Jones Mahoney Corporation v. Hutto, 421 So.2d 703 (Fla. 1st DCA 1982), this court held that the deputy erred in awarding claimant temporary total disability benefits where there was no competent, substantial evidence that he was unable to work as of September 12, 1980, when he was told he could return to work, and that claimant was entitled to temporary partial disability benefits from the commencement of his work search on November 3, 1980 until he reached maximum medical improvement. In the instant case, the deputy properly denied temporary total disability benefits from the date claimant had been told he could return to work, based on his finding that claimant had not undertaken an adequate work search. Under the rationale of the cited cases,^temporary partial disability benefits could only be awarded from the time claimant commenced an adequate work search, which he did not do.
Finally, the deputy’s finding that claimant was able to earn $110 per week during the period of his temporary disability is not supported by any evidence in the record and must also be reversed.
*5 The deputy awarded wage-loss benefits after June 2, 1982, the date on which Dr. Baker found claimant had reached maximum medical improvement, finding that claimant had sustained a permanent anatomic impairment of five percent of the whole person, based upon Dr. Baker’s testimony, and that claimant had attempted to seek employment since being told to return to work. Dr. Baker’s deposition, upon which the deputy relied for evidence of an anatomic impairment upon which to base his award of wage-loss benefits, indicates that the AMA Guides applied to claimant’s injury, but that claimant’s impairment rating under the AMA Guides was zero. Although this court has until quite recently required that a finding of permanent impairment, a prerequisite to an award of wage-loss benefits, be based on the AMA Guides, this rule has been modified by our en banc decision in Trindade v. Abbey Road Beef ’n Booze, 443 So.2d 1007 (Fla. 1st DCA 1983). That case held that, for purposes of determining eligibility for wage-loss benefits, the existence and degree of permanent impairment resulting from injury shall be determined pursuant to the AMA Guides, “unless such permanent impairment cannot reasonably be determined under the criteria utilized in the Guides, in which event such permanent impairment may be established under other generally accepted medical criteria for determining impairment.” at 1012.[1] Appellate courts must apply the law in existence at the time of the appeal. Hendeles v. Sanford Auto Auction, Inc., 364 So.2d 467 (Fla.1978). We therefore remand the cause to the deputy for reconsideration of this issue in light of Trindade, supra.
We reverse the award of temporary partial disability benefits from June 12, 1980 through March 16, 1982 and the deputy’s finding that claimant was able to earn $110 per week during that period. We remand for reconsideration of the award of wage-loss benefits from June, 1982 in light of our recent decisions and affirm the remainder of the order.
MILLS, BOOTH and SHIVERS, JJ., concur.

. We note that the Department of Labor and Employment Security, Division of Workers’ Compensation, is in the process of amending its rule regarding the determination of physical impairment. Rule 38F-3.175, due to become final December 17, 1983, provides, in pertinent part:
When the injury is to the knee, hip, shoulder, or elbow and the resulting permanent condition is not a permanent impairment under the [AMA Guides] ..., the Manual for Evaluation of Permanent Physical Impairment of the American Academy of Orthopedic Surgeons shall be used to determine the existence and degree of permanent impairment.