475 So.2d 947 (1985)
OBS COMPANY, INC. and Mission Insurance Company, Appellants,
v.
Donald FREENEY, Appellee.
No. BD-331.
District Court of Appeal of Florida, First District.
September 5, 1985.
Rehearing Denied October 11, 1985.
John S. Smith of Marlow, Shofi, Smith, Hennen, Smith & Slother, Tampa, for appellants.
Barry M. Salzman of Chambers & Salzman, St. Petersburg, for appellee.
BOOTH, Chief Judge.
This cause is before us on appeal from a workers' compensation order awarding claimant temporary partial disability benefits and wage-loss benefits. The issues presented are: (1) whether the deputy commissioner erred in awarding wage-loss benefits when claimant had no permanent impairment under the AMA Guides to the Evaluation of Permanent Impairment (Guides); and (2) whether the deputy commissioner erred in awarding temporary partial disability benefits when claimant had been released to perform employment with no limitations or restrictions other than avoiding wet plaster or wet cement.
On February 29, 1984, claimant, a 37-year-old high school graduate, developed contact dermatitis as a result of exposure to wet cement while working for the employer, OBS Company, Inc. (OBS). Claimant's treating physician, Dr. Harold Seder, determined that claimant's dermatitis was an allergic reaction rather than an irritational reaction, which means that each time claimant comes in contact with wet cement, he can expect to have the dermatitis. Claimant had worked as a journeyman plasterer for three or four years prior to the onset of the dermatitis. At the time he was disabled by dermatitis, he was earning ten dollars per hour, with an average weekly wage of $400. The parties stipulated that claimant reached maximum medical improvement on July 30, 1984.
*948 Dr. Seder was of the opinion that, based upon the Guides, claimant had sustained no ratable permanent impairment. However, Dr. Seder testified that, if he were not required to follow the criteria in the Guides, he was of the opinion that claimant has a permanent physical impairment to the extent that he must avoid contact with wet cement and therefore cannot work as a plasterer. When asked whether he could give a rating of claimant's permanent impairment if claimant remained in his occupation as a plasterer, Dr. Seder responded that he could not but that, if claimant continued in such occupation, claimant would be totally incapacitated and unable to work at all.
Claimant had worked approximately three to four years before becoming disabled by the contact dermatitis on February 29, 1984. He has had some training in horticulture and block masonry. His work history includes janitorial work, working in a lumberyard, block masonry, and lawn maintenance. After his release to work on June 4, 1984, claimant unsuccessfully searched for a job. Most of the employers claimant contacted or with whom he filed an application were not hiring. Claimant admitted that he tried to obtain work which paid more than the minimum wage.
The deputy commissioner found that claimant was temporarily partially disabled from April 16, 1984, to May 15, 1984, and from June 4, 1984, to July 30, 1984, during which times he conducted a good-faith job search. He further found that claimant had performed an adequate job search after he had reached maxiumum medical improvement on July 30, 1984, that claimant's wage loss was causally related to his occupational disease, and that claimant had a permanent physical impairment as a result of his occupational disease.
The order of the deputy commissioner awarding temporary partial disability benefits and wage-loss benefits is, in pertinent part, as follows:
The main issue of this claim is whether the claimant has a permanent physical impairment that makes him eligible to receive wage loss benefits. Some historical background on the compensability of the claimant's condition may be helpful. Contact dermatitis due to cement has long been recognized as an occupational disease in Florida. Accord: Phelps v. Gunite Construction and Rentals, Inc., 279 So.2d 829 (Fla. 1973). Likewise, under pre-Wage Loss law, when an employee suffered "disability" as a result of an occupational disease, "disability' [sic] being defined then, as now, by Chapter 440 as the "incapacity because of the injury to earn in the same or any other employment the wages which the employee was receiving at the time of the injury", an injured worker was entitled to receive permanent indemnification benefits, either partial or total. It is obvious to the undersigned, based upon findings more specifically set out in this order, that were this claim governed by the law in effect prior to institution of the wage loss concept, the claimant herein would have a permanent impairment of his wage earning capacity and would be entitled to permanent partial disability benefits. See, Martinez v. Robert Weber Construction Company, 181 So.2d 645 (Fla. 1966), and Plantation Construction Company v. Ayers, 385 So.2d 1138 (Fla. 1st D.C.A. 1980).
However, under the Wage Loss law that was in effect at the time of the accident herein, in order to be eligible for wage loss benefits, an injured worker must incur a permanent impairment pursuant to the A.M.A. Guides unless such permanent impairment cannot be determined by the Guides, in which case such permanent impairment may be established under other generally accepted medical criteria for determining impairment. Accord: Trindade v. Abbey Road Beef 'n Booze, 443 So.2d 1007 (Fla. 1st D.C.A. 1983). In the instant case, the claimant's doctor opined that under the examples and criteria set forth in Chapter 12, "The Skin", of the A.M.A. Guides, the claimant would have a zero percent impairment even though the claimant would not be able to return to his former *949 employment. The doctor also opined that if the claimant continued to work in wet cement he would have a permanent impairment.
Chapter 12 of the Guides, dealing with the skin, states in the introductory paragraph that:
"This `Guide' provides criteria for evaluating the effect that permanent impairment of the skin and its appendages has on an individual's ability to perform the activities of daily living".
American Medical Association Committee on Rating of Mental and Physical Impairment, Guides to the Evaluation of Permanent Impairment, Chapter XII, "The Skin", P. 143 (1971).
Additionally, the phrase, "activities of daily living" is specifically defined in the Guides as:
"Evaluation of permanent impairment is an appraisal of the nature and extent of the patient's illness or injury as it affects his personal efficiency in one or more of the activities of daily living. These activities are self-care, communication, normal living postures, ambulation, elevation, traveling, and non-specialized hand activities."
American Medical Association Committee on Rating of Mental and Physical Impairment, Guides to the Evaluation of Permanent Impairment, "Preface", P. iii, (1971).
Of note, is the conspicuous absence of reference to how a particular condition affects one's efficiency in personal physical activities peculiar to one's employment.
Essentially, the main issue in the instant case can be stated as follows: whether the so-called exclusivity of the Guides must be recognized with respect to injuries or conditions which, although "covered" in the Guides, do so only to the extent of providing a permanent impairment rating where the condition has resulted in some limitation in performance of some of the activities of daily living, where the existence of permanent impairment other than some limitation in the performance of daily living activities, i.e., physical limitation of certain employment activities, has been made to appear by evidence meeting generally accepted medical standards for determining impairment? It is the opinion of the undersigned that the Trindade decision, supra, dealing with an analogous situation (instability of joint but no loss of range of motion) compels the answer, that under those circumstances, the A.M.A. Guides do not exclusively control in this specific factual circumstance.
A review of Chapter 12 of the Guides on "The Skin" and the examples set forth leads the undersigned to conclude that the existence and degree of permanent impairment under the particular facts of this case cannot be determined by the Guides. As pointed out above, the Guides in this particular chapter deal with the effect that the permanent impairment of the skin has on an individual's ability to perform the activities of daily living without taking into consideration the effect that a skin impairment has on one's employment activities. This is reinforced by the examples given in the Guides. Under "Class one, 0 to 5%, Example two", Page 144, an employee with a dermatitis condition that clears up if he avoids certain agents, receives a zero percent impairment even if that person cannot return to the type of employment that he was performing at the time of his exposure and outbreak (this is the example that applies to the claimant herein). However, under "Class two, 10% to 20%, Example one", Page 145, a housewife that develops a chronic dermatitis that requires some intermittent treatment receives a ten percent impairment. Thus, it is obvious that the effect that the skin condition has upon one's economic loss, which is the heart of the wage loss concept, is not a factor in making a determination of impairment to the skin under the Guides. Collaterally, but not a factor in the undersigned's findings, is the pronouncement in Trindade, supra, that since the indispensable requisite of the wage loss concept is economic *950 loss, a classification which distinguishes between eligible and ineligible claimants on a basis which bears no reasonable relationship to their respective economic loss is violative of certain Federal and State Constitutional guarantees.
The claimant's physician has opined that the claimant would have a permanent impairment as a result of his condition if he continued to work with wet cement. However, the claimant would encounter increasing physical problems from the dermatitis that would eventually totally incapacitate him from working in that employment. Additionally, the employer/carrier could assert the affirmative defense of a voluntarily inflicted injury against claims for indemnity benefits under those circumstances. Accord: Ernest Waters Construction Company v. Mills, 51 So.2d 180 (Fla. 1951). On the other hand, if one accepts the premise that the Guides are exclusive in this particular situation, and the claimant accepts other less remunerative employment, he would not be entitled to wage loss benefits because the Guides do not provide an impairment rating.
I find, however, that under the facts of this particular case, the Guides do not deal with the effect that the dermatitis has upon the claimant's ability to return to and perform the various physical activities of the employment in which he developed the occupational disease as opposed to the claimant's ability to carry out daily living activities as defined by the Guides.
The claimant's treating physician, Harold Seder, M.D., a Board Certified Dermatologist, has opined that the claimant would have a permanent impairment if the claimant continued to work with wet cement and that he would eventually become totally disabled from working in that employment as a result of the dermatitis. Dr. Seder also observed the outbreak of the dermatitis upon the claimant's skin. It was Dr. Seder's opinion that the claimant should not return to employment involving contact with wet cement. The undersigned accepts the testimony of Dr. Seder and finds that this expert opinion is competent and substantial evidence that establishes the existence of a permanent impairment of an unknown degree under the facts of this particular case and that this evidence meets generally acceptable medical standards for determining impairment, especially in light of the fact that the doctor was not aware of any guides other than the A.M.A. Guides for determining dermatological impairment.
Claimant clearly suffers from permanent impairment which has resulted in his "incapacity because of the injury to earn in the same or any other employment the wages which the employee was receiving at the time of the injury." (emphasis added). Section 440.02(9), Florida Statutes. Due to his skin condition, claimant cannot work in his chosen occupation, where he earned a relatively high salary, and, in all likelihood, is unable to earn an equal wage in other employment without further training. Although not presented as an issue, we note that neither the employer nor its servicing agent has provided claimant any rehabilitation services as required by Section 440.49(1)(a), Florida Statutes.[1] In the *951 situation before us, claimant's condition is directly related to his occupation. Under the terms of the Guides, there is no impairment if the injury does not affect the employee's daily living. In the case sub judice, claimant's skin condition does not affect his daily living as long as he does not work in his job. Essentially, as long as claimant does nothing, there is no impairment.
In Trindade v. Abbey Road Beef 'n Booze, 443 So.2d 1007, 1011 (Fla. 1st DCA 1983), this court held:
We have the obligation of interpreting a statute in a manner consistent with the legislative intent, to the extent it is ascertainable and can lawfully be implemented. We have the further obligation of applying an interpretation upholding the constitutionality of a statute, if such an interpretation is permissible. Department of Insurance, State of Florida v. Southeast Volusia Hospital District, 438 So.2d 815 (Fla. 1983).
Accordingly, although the Guides do not award the permanent impairment to claimant's skin condition, we affirm and agree with the deputy that, under the particular factual circumstances at bar, the Guides are not exclusively controlling because the Guides do not address claimant's evident economic loss, which is the basis of the wage-loss concept. Trindade at 1012.
As to the award of temporary partial disability benefits, the deputy's finding that claimant conducted a valid, good-faith job search after his release by his doctor to return to some other type of employment is supported by competent, substantial evidence. We therefore affirm that award.
We certify to the Supreme Court of Florida the following question as one of great public importance:
DO THE AMA GUIDES TO THE EVALUATION OF PERMANENT IMPAIRMENT APPLY AND PRECLUDE A PERMANENT IMPAIRMENT RATING WHERE CLAIMANT SUFFERS A DISABILITY DUE TO OCCUPATIONAL DISEASE WHICH PERMANENTLY IMPAIRS CLAIMANT'S ABILITY TO WORK, RESULTING IN ECONOMIC LOSS, BUT DOES NOT AFFECT "THE ACTIVITIES OF DAILY LIVING?"
WIGGINTON and BARFIELD, JJ., Concur.
NOTES
[1] Section 440.49(1)(a), Florida Statutes, provides, in pertinent part, as follows:

(1) REHABILITATION OF INJURED EMPLOYEES. 
(a) When an employee has suffered an injury covered by this chapter and it appears that the injury will preclude the employee from earning wages equal to wages earned prior to the injury, the employee shall be entitled to prompt rehabilitation services. The employer or carrier, at its own expense, shall provide such injured employee with appropriate training and education for suitable gainful employment and may cooperate with federal and state agencies for vocational education and with any public or private agency cooperating with such federal and state agencies in the vocational rehabilitation of such injured employees. For purposes of this section only, "suitable gainful employment" means employment or self-employment which is reasonably attainable in light of the individual's age, education, previous occupation, and injury and which offers an opportunity to restore the individual as soon as practicable and as nearly as possible to his average weekly earnings at the time of injury... .