509 So.2d 930 (1987)
DAYRON CORPORATION and the Claims Center, Petitioners,
v.
Frank MOREHEAD, Respondent.
No. 68234.
Supreme Court of Florida.
July 16, 1987.
Robert G. Brightman, of B.C. Pyle, P.A., Orlando, for petitioners.
Edward H. Hurt, Sr., of Hurt, Parrish & Dalton, P.A., and Bill McCabe, of Shepherd, McCabe & Cooley, Orlando, for respondent.
PER CURIAM.
We have for review Dayron Corp. v. Morehead, 480 So.2d 235 (Fla. 1st DCA 1985), in which the district court of appeal certified the following as a question of great public importance:
DO THE AMA GUIDES TO THE EVALUATION OF PERMANENT IMPAIRMENT APPLY AND PRECLUDE A *931 PERMANENT EVALUATION RATING WHERE CLAIMANT SUFFERS A DISABILITY DUE TO OCCUPATIONAL DISEASE WHICH PERMANENTLY IMPAIRS CLAIMANT'S ABILITY TO WORK, RESULTING IN ECONOMIC LOSS, BUT DOES NOT AFFECT "THE ACTIVITIES OF DAILY LIVING?"
Id. at 236 (footnote omitted). We have jurisdiction pursuant to article V, section 3(b)(3), Florida Constitution. We answer the question in the negative and affirm the decision of the district court in favor of respondent Morehead.
The issue here arises from a worker's compensation award entered against petitioner Dayron Corporation and affirmed by the First District. The award was based on acute contact dermatitis, a serious skin disorder that Morehead suffered when Dayron, his employer, began using a new oil-based coolant in metal-cutting machinery. Morehead's job required constant exposure to this substance. At the worker's compensation hearing, a qualified physician testified that Morehead had a permanent sensitivity to the coolant, would be unable to work when exposed to it, but would have no impairment if not exposed to it. The parties stipulated that Morehead had suffered an "[a]ccident/condition arising out of and in the course of employment." On January 7, 1985, the deputy commissioner of the Division of Worker's Compensation found for Morehead on his claim for temporary partial or wage loss benefits while determining that Morehead had suffered a permanent physical disability. The award covered the period from April 22, 1984, to September 30, 1984, during which Morehead was able to find only limited alternative work, despite his best efforts.
On appeal, Dayron argues that a provision of the Florida Worker's Compensation Law[1] (the "Statute"), section 440.15(3)(a)(3),[2] dealing with "permanent impairment," requires evaluation of Morehead's claim under the American Medical Association's Guides to the Evaluation of Permanent Impairment (2d ed. 1984) ("AMA Guides").[3] The AMA Guides provide a range of zero to five percent impairment rating of the whole person under the category pertaining to evaluation of permanent impairment of the skin. Dayron argues that under an example provided in this section, which is analogous to the case before us, the AMA Guides note a zero percent impairment of the whole person. In the comment to that example, however, the AMA Guides anticipate the possible confusion of the terms "impairment" and "disability" which indeed has occurred in this case:
Although this worker has 0% impairment of the whole person, he may be disabled under some state workers' compensation statutes.
AMA Guides at 205. Even in their preface, the AMA Guides note that "impairment" should not be confused with "disability," the former being a medical assessment and the latter a legal issue. Id. at vii.
When an injury is not covered by the AMA Guides, it is permissible to rely upon medical testimony of permanent impairment based upon other generally accepted medical standards. Deseret Ranches v. Crosby, 461 So.2d 295 (Fla. 1st DCA 1985). Here, Morehead's condition is addressed in *932 the AMA Guides, but it is evaluated only in terms of medical impairment without regard to the wage loss which may result from disability. The statute on occupational diseases provides that workers' compensation shall be paid for disablement. § 440.151, Fla. Stat. (1985). Section 440.151(3) reads:
(3) Except as hereinafter otherwise provided in this section, "disablement" means the event of an employee's becoming actually incapacitated, partially or totally, because of an occupational disease, from performing his work in the last occupation in which injuriously exposed to the hazards of such disease; and "disability" means the state of being so incapacitated.
Thus, it appears that a claimant who suffers a permanent disability from an occupational disease is entitled to compensation even though he is not affected if he does not return to work under the conditions which cause his disability. See Conner v. Riner Plastering Co., 131 So.2d 465 (Fla. 1961).
The First District Court of Appeal faced a similar issue in OBS Co. v. Freeney, 475 So.2d 947 (Fla. 1st DCA 1985), which was a case involving a cement worker who became allergic to wet cement. In affirming an award of compensation, the court said:
Claimant clearly suffers from permanent impairment which has resulted in his "incapacity because of the injury to earn in the same or any other employment the wages which the employee was receiving at the time of the injury." (emphasis added). Section 440.02(9), Florida Statutes. Due to his skin condition, claimant cannot work in his chosen occupation, where he earned a relatively high salary, and, in all likelihood is unable to earn an equal wage in other employment without further training. .. . In the situation before us, claimant's condition is directly related to his occupation. Under the terms of the Guides, there is no impairment if the injury does not affect the employee's daily living. In the case sub judice, claimant's skin condition does not affect his daily living as he does not work in his job. Essentially, as long as claimant does nothing, there is no impairment.
In Trindade v. Abbey Road Beef'n Booze, 443 So.2d 1007, 1011 (Fla. 1st DCA 1983), this court held:
We have the obligation of interpreting a statute in a manner consistent with the legislative intent, to the extent it is ascertainable and can lawfully be implemented. We have the further obligation of applying an interpretation upholding the constitutionality of a statute, if such an interpretation is permissible. Department of Insurance, State of Florida v. Southeast Volusia Hospital District, 438 So.2d 815 (Fla. 1983).
Accordingly, although the Guides do not award the permanent impairment to claimant's skin condition, we affirm and agree with the deputy that, under the particular factual circumstances at bar, the Guides are not exclusively controlling because the Guides do not address claimant's evident economic loss, which is the basis of the wage-loss concept. Trindade at 1012.
475 So.2d at 950-51.
Economic loss is an indispensable requisite of the wage-loss concept. Therefore, the AMA Guides are inapplicable when, as here, they preclude a finding of permanent impairment where the claimant suffered a disability due to an occupational disease which permanently impairs his ability to work and results in economic loss but does not affect his activities of daily living. Since there was substantial competent evidence which otherwise supports the finding of permanent impairment, we affirm the decision of the district court of appeal.
It is so ordered.
McDONALD, C.J., and OVERTON, EHRLICH, SHAW, BARKETT, GRIMES and KOGAN, JJ., concur.
NOTES
[1] §§ 440.01 to 440.60, Fla. Stat. (1985).
[2] Section 440.15(3)(a)3 says:

In order to reduce litigation and establish more certainty and uniformity in the rating of permanent impairment, the division shall establish and use a schedule for determining the existence and degree of permanent impairment based upon medically or scientifically demonstrable findings. The schedule shall be based on generally accepted medical standards for determining impairment and may incorporate all or part of any one or more generally accepted schedules used for such purpose, such as the American Medical Association's Guides to the Evaluation of Permanent Impairment. On August 1, 1979, and pending the adoption, by rule, of a permanent schedule, Guides to the Evaluation of Permanent Impairment, copyright 1977, 1971, by the American Medical Association, shall be the temporary schedule and shall be used for the purposes hereof.
[3] The legislature first adopted the AMA Guides as a standard when it substantially rewrote the Worker's Compensation Law in 1979. See ch. 79-40, Laws of Fla.