461 So.2d 295 (1985)
DESERET RANCHES, a Self-Insured, Appellant, and
Corporate Group Service, Appellant/Cross-Appellee,
v.
Jerry CROSBY, Appellee, and
Florida Farm Bureau Insurance Company, Cross-Appellant.
No. BA-26.
District Court of Appeal of Florida, First District.
January 8, 1985.
*296 James B. Cantrell, Sparks, Cooper & Leklem, Orlando, for appellant Deseret Ranches and appellant, cross-appellee Corporate Group Service.
Joseph T. Farrell, Simmermon & Farrell, Orlando, for appellee Jerry Crosby.
James M. Hess, Driscoll, Langston, Kane & Hess, Orlando, for appellant Deseret Ranches and cross-appellant, Fla. Farm Bureau Ins. Co.
THOMPSON, Judge.
The self-insured employer, Deseret Ranches, and its servicing agent, Corporate Group Service (CGS), appeal an order requiring CGS to pay claimant temporary partial disability (TPD) benefits from August 28, 1983 to November 21, 1983, and wage loss benefits from November 21, 1983 through April 1, 1984, and ordering the employer's former carrier, Florida Farm Bureau Insurance Company (FFB) to reimburse CGS for 50 percent of all benefits paid. FFB cross-appeals. We affirm in part and reverse in part.
Jerry Crosby, the claimant, began work for Deseret Ranches as a cowboy in 1978. In May 1981 the horse he was riding slipped, falling against a fence with claimant and injuring claimant's lower back. At the time of this accident the employer's insurance carrier was FFB. Following this accident, Crosby continued to work, saw Dr. Luke, a chiropractor, for two months, and then also became a patient of Dr. Farrar, an orthopedic surgeon. Dr. Luke stated that Crosby reached maximum medical improvement (MMI) as of July 1981. Dr. Farrar placed the date of MMI at May 1982.
In October 1982 claimant had a second accident when the horse he was riding stepped in a hole and fell, throwing him off. At the time of this second accident, the employer was self-insured and the servicing agent was CGS. The second accident primarily injured Crosby's neck and shoulder. Claimant returned to Dr. Luke that same month and continued treatment *297 with him until December 1983. In January 1983 Crosby also returned to Dr. Farrar, complaining initially of neck pain, although in late January claimant began having trouble with his lower back. From January 1983, until Dr. Farrar saw claimant for the last time in December 1983, his primary complaint was of lower back pain. Dr. Farrar stated that he did not "see enough to warrant the assignment of any impairment" for claimant's lower back. He reserved judgment as to any possible permanent impairment due to the neck injury.
Dr. Bott examined claimant one time in June 1983 at the request of CGS. He evaluated Crosby with regard to both injuries and found no permanent impairment referrable to either accident. He explained that under the AMA Guidelines claimant was not impaired but that under the Orthopedic Surgeon's Manual (OSM) Crosby would have approximately a 2 percent permanent impairment rating with regard to his neck.
Dr. Maxwell also examined claimant only one time, in November 1983, when Crosby was referred to him by the Vocational Rehabilitative Service. He found that claimant had reached MMI and gave him a 5 percent permanent impairment rating attributable to both injuries. He stated that he had "considered" both the AMA Guidelines and the OSM in assessing the impairment rating.
The deputy commissioner (deputy) accepted Dr. Maxwell's testimony and found that Crosby had sustained a 5 percent permanent impairment which was attributable 50 percent to each accident. Accordingly, he ordered the two insurers, FFB and CGS, to share the cost of the benefits awarded equally.
On appeal, both FFB and CGS urge that the deputy improperly accepted and relied upon Dr. Maxwell's testimony over the other medical testimony. We cannot agree. Drs. Farrar, Bott and Maxwell all agreed that any permanent impairment which Crosby suffered does not fall within the range of the AMA Guides, and two of the doctors acknowledge a low rating under the OSM. When an injury is not covered by the AMA Guides "it is not error for the deputy to rely on medical testimony of permanent impairment based upon other generally accepted medical standards." Trindade v. Abbey Road Beef'n Booze, 443 So.2d 1007, 1011 (Fla. 1st DCA 1983).
On both appeal and cross-appeal FFB and CGS argue, inter alia, that the deputy erred in apportioning the cost of all benefits between them, 50 percent each. Cross-appellant FFB correctly asserts that the deputy erred in ordering it to reimburse CGS for 50 percent of the TPD benefits payable to claimant. Following his first accident, for which FFB was the carrier, Crosby continued to work while undergoing medical treatment although some slight modifications to his job were suggested by Dr. Farrar. He was discharged in May 1982 as having no permanent impairment. Approximately five months later, in October 1982, claimant had his second accident. As in Hayward Trucking, Inc. v. Aetna Insurance Co., 445 So.2d 385 (Fla. 1st DCA 1984), the servicing agent at the time of the second accident, CGS, should be solely responsible for any TPD benefits payable subsequent to the second accident. Accordingly, the portion of the deputy's order requiring FFB to reimburse CGS for 50 percent of all TPD benefits paid is reversed.
The apportionment of the permanent impairment rating between the two accidents and corresponding apportionment of the cost of wage loss benefits between the two carriers is proper. A deputy may apportion any permanency a claimant has after he has attained MMI. Hayward Trucking, 445 So.2d at 387. None of the doctors who testified were able to apportion Crosby's impairment between his two injuries with any degree of certainty, although all agreed that both accidents were clearly troublesome. A 50-50 apportionment under these circumstances seems to be a fair solution.
Therefore, the deputy's finding that claimant sustained a permanent impairment *298 is affirmed, as is the deputy's order that FFB reimburse CGS for 50 percent of the cost of the wage loss benefits awarded. That portion of the deputy's order requiring FFB to reimburse CGS for 50 percent of the TPD benefits awarded is reversed.
ERVIN, C.J., and BOOTH, J., concur.