ON MOTION FOR REHEARING
The parties to this consolidated appeal have requested rehearing or clarification of the Court’s opinion filed on January 7, 1986.
Our attention is directed first to the dates of the compensable accidents which form the basis of this appeal. As the parties note, the opinion states incorrectly that claimant sustained a cervical injury in 1976 *569 and a lumbar injury in 1979; these dates should indicate 1974 for the cervical injury and 1976 for the lumbar injury. The opinion is hereby modified to reflect these corrected dates of injury. We also note that this change in dates does not materially affect the situation.
Next, we consider the appropriate apportionment of permanent total disability at the rate of $112 per week, which is the 1976 compensation rate. In the order entered November 14, 1984, the deputy commissioner found, inter alia, that the contest between the carriers, during which both carriers refused to provide surgery, resulted in malignant hypertension which has effectively precluded claimant from ever returning to gainful employment. The deputy commissioner then ordered each carrier to pay PTD at the rate of $56 per week, beginning December 13, 1982, the date of MMI from the hypertensive disease. Although the $56 weekly rate constitutes an equal division of the $112 PTD benefit to which claimant is entitled, the deputy commissioner did not in express terms order each carrier to pay half of the PTD benefits. Instead, the order provides that Travelers Insurance Company, the carrier at the time of the 1979 cervical injury, shall pay $80 per week as TTD benefits from February 10,1980 to December 13, 1982. Then, Travelers is to pay PTD benefits at the rate of $56 per week, beginning December 13, 1982 — the other $56 per week to be paid by FIGA.
In our prior opinion, we noted that appel-lee apparently conceded an error in the order directing Travelers to pay $56 per week, when the maximum compensation rate at the time of the 1974 accident was $80. Accordingly, we modified the order to reflect that Travelers would pay $40 per week. We now recede from this position.
Our further examination of the record, the deputy commissioner’s orders, and the motions of the parties herein, leads us to conclude that the deputy’s order directing Travelers to pay $56 per week was not an omission or inadvertent error indicating that the deputy commissioner failed to consider the maximum compensation rate in 1974. Instead, we consider that the deputy consciously intended to reduce Travelers’ liability for PTD benefits from $80 per week to $56 per week, beginning December 13,1982. We conclude the deputy commissioner did not intend an equal division of the original compensation rates for which each carrier was liable. We arrive at this determination after a review of the deputy commissioner’s order wherein the deputy commissioner expressly finds that claimant’s malignant hypertensive disease, which has resulted in an additional 50-75% permanent partial impairment, which additional disability is directly attributable to the failure of the carriers to provide claimant with necessary corrective surgery, and reconsideration of that portion of the deputy’s order which states:
the record is implicitly clear that it was indeed an unjustified refusal and delay that has brought the Claimant to his present condition for a representative of [Travelers], ... on cross-examination candidly admitted that his company deliberately did not furnish the surgery because “if we did we might get stuck with the disability.”
Once the claimant attained maximum medical improvement, the deputy commissioner was free to apportion compensation and medical benefits between the respective carriers. City of Fernandina Beach v. School Board of Nassau County, 488 So.2d 871 (Fla. 1st DCA 1986); Flagship National Bank of Broward County v. Hinkle, 479 So.2d 828 (Fla. 1st DCA 1985); Hayward Trucking, Inc. v. Aetna Insurance Co., 466 So.2d 437 (Fla. 1st DCA 1985); Deseret Ranches v. Crosby, 461 So.2d 295 (Fla. 1st DCA 1985). As this court said in U.S. Electric Company v. Sisk Electric Services, Inc., 417 So.2d 738, 739 (Fla. 1st DCA 1982),
The determinative factor in placing liability under Section 440.42(3) is whether the second compensable accident causes injury which is independent from or an exacerbation of that from the first compensa-ble accident. Section 440.42(3) thereafter *570 allows the deputy to divide liability according to each carrier’s responsibilities.
This record contains competent substantial evidence to support the deputy commissioner’s allocation of responsibility for claimant’s permanent total disability benefits, therefore we affirm.
The final point which requires some discussion is FIGA’s assertion that the deputy commissioner did not retain jurisdiction to enter the April 1985 order because the matters contained therein had been appealed. Florida Workers' Compensation Rule 4.160(a) provides in relevant part that a notice of appeal of an order of a deputy “shall contain a certificate of appellant (or cross-appellant) or counsel setting out periods and classifications of benefits and medical treatment affected by the appeal.” During the pendency of the appeal, “the deputy shall retain jurisdiction to enter orders on all matters of the claim which have not been appealed.” Fla.W.C.R.P. 4.200(b)(3).
We note the Notice of Appeal filed by FIGA contains a blanket certification that the appeal “affects all payment of temporary total disability benefits or permanent total disability benefits and medical care and attention as relates to the claimant’s hypertensive condition, of those benefits determined to be paid by FLORIDA INSURANCE GUARANTY ASSOCIATION.” In the April 1985 order, the deputy commissioner noted the November 14, 1984 order was on appeal. The November 1984 order made FIGA “responsible” for furnishing treatment of claimant’s hypertensive disease “in view of the fact that it was FIGA that was on the risk at the time of the last accident and because the condition was caused by the joint delay or refusal of both carriers to provide the corrective surgery.” That order stated “jurisdiction ... is hereby reserved ... as to the claims for reimbursement asserted by the Carriers.” The 1985 order simply directed FIGA to reimburse Travelers for medical expenses Travelers incurred in the treatment of claimant’s hypertension. We do not consider that this direction impacts in any way on matters raised in the appeal of the November 14, 1984 order.
Accordingly, we recede from our modification of the order appealed from and affirm it in total.
WENTWORTH and THOMPSON, JJ., concur.