455 So.2d 590 (1984)
CARPENTERS R.V. SERVICE and South Carolina Insurance Company, Appellants,
v.
Albert E. ECKERT, Appellee.
No. AX-40.
District Court of Appeal of Florida, First District.
September 5, 1984.
Rehearing Denied October 2, 1984.
*591 James N. McConnaughhay & Gordon D. Cherr of Karl, McConnaughhay, Roland & Maida, Tallahassee, for appellants.
James F. McKenzie, Pensacola, for appellee.
NIMMONS, Judge.
The employer and carrier (E/C) appeal from an order awarding wage-loss benefits for the period of May, 1983, through September, 1983. His earnings are derived from his commissions on real estate sales. We affirm.
On August 4, 1979, the claimant, now 51 years old, injured his left shoulder while working as a recreational vehicle maintenance mechanic for the employer, Carpenters R.V. Service. The injury involved a capsular tear over the front part of his left shoulder and resulted in a permanent impairment. The claimant, who is left-handed, was unable to continue in that kind of work or in other work in which he had previously been engaged including plumbing, heating and construction. As the deputy commissioner found in his previous unappealed order entered in 1980 awarding wage loss benefits, claimant's treating physician recommended a change in claimant's vocation because of the problems encountered in using his left arm. Accordingly, the claimant enrolled in a real estate course and passed his real estate license examination. Thereafter, he became employed with a real estate firm and commenced selling real estate on a commission basis.
At the 1980 wage-loss hearing, the E/C contended that the claimant did not make an adequate work search for jobs which he could do without resorting to vocational training to become a real estate salesman. The E/C brought out at the hearing that the claimant had not accepted the employer's offer to try selling recreational vehicles on a straight commission basis. In the 1980 order, the deputy rejected the E/C's contentions, found that the vocational training undertaken by the claimant was appropriate and ordered the E/C to reimburse the claimant the expenses incurred in connection with such training and to pay the claimant wage loss for the period of training and for a period of time after the claimant commenced selling real estate. As previously noted, that order was not appealed.
Thereafter, the E/C voluntarily paid wage-loss benefits for those months in which the claimant's earnings from his sales justified such benefits. As the claimant has gained further knowledge and experience in the real estate business, his earnings have steadily increased although they, of course, have varied from month to month. For example, in January 1983, he earned $1,200 in commissions, and the E/C did not have to pay the claimant any benefits.[1] In February, he earned $600 and the E/C had to pay wage loss. In March, the claimant's earnings were $2,745 and so no benefits were paid. In April, the claimant earned no commissions and so full wage-loss benefits were paid.
In June 1983, the E/C apparently decided that they were not going to pay any more wage-loss benefits because, as they contended, the amounts claimed to be due were caused by the nature of his business as a real estate salesman and not due to his *592 injury. The E/C also asserted at hearing that, because of the fluctuation in claimant's earnings, wage loss should not be calculated on a monthly basis as contemplated by the statute. Instead, the E/C asserted, his earnings for the calendar year should be totalled and compared with his pre-injury annual income.
Our recent case of National Distillers v. Guthrie, 443 So.2d 354 (Fla. 1st DCA 1984), which also involved a wage-loss claim by a claimant engaged in real estate sales, requires rejection of the E/C's contentions[2]unless the 1983 amendment to § 440.15(3)(b)2 indicates that a different result should be reached.[3] The portion of the statute added by Chapter 83-305, Laws of Florida, is emphasized in the following excerpt from Section 440.15(3)(b)2:
Whenever a wage-loss benefit as set forth in subparagraph 1. may be payable, the burden shall be on the employee to establish that any wage loss claimed is the result of the compensable injury. It shall also be the burden of the employee to show that his inability to obtain employment or to earn as much as he earned at the time of his industrial accident, is due to physical limitation related to his accident and not because of economic conditions or the unavailability of employment.

This court's interpretation of the amended section in City of Clermont v. Rumph, 450 So.2d 573 (Fla. 1st DCA 1984), is relevant. There, the employer and carrier argued that the amendment precludes an award of wage-loss benefits unless a claimant establishes that economic conditions do not affect his employability. We rejected that construction of the statute as amended and held:
We construe the amendment, instead, as precluding an award of wage loss benefits when predicated solely on economic considerations unrelated to a claimant's physical limitations by ordinary proximate cause standards. We further read the amendment as emphasizing the requirement that claimant shall present evidence indicating that the compensable physical limitation is a contributing causative factor in the wage loss claimed. Claimant's initial burden under the amended language, therefore, is to present evidence, by job search when appropriate, which reasonably permits a conclusion that the compensable physical limitation was an element in the causal chain resulting in or contributing to the wage loss.
Id. at 576.
We hold that there was competent substantial evidence in the instant case indicating that claimant's compensable physical limitation was a contributing causative factor in the wage loss claimed. The claimant's present employment in the real estate business, instead of the kind of regular income job he had with the employer, is attributable to his disability. It was established by the previous 1980 unappealed order that the claimant was, by reason of his permanent impairment, unable to continue *593 performing the kind of work for which he had training and experience, that it was necessary for him to submit to education and training in another field of endeavor and that real estate sales was a reasonable avenue for the claimant to pursue. And the 1980 order, therefore, required the E/C to reimburse the claimant for his expenses in obtaining his real estate license. Further, the testimony clearly shows that the claimant has conscientiously and enthusiastically pursued his new vocation over the past several years and his earnings therefrom have steadily increased as a consequence of his efforts.
The E/C does not contend that the claimant failed to put forth reasonable diligence in his efforts to sell real estate during the months in question when his earnings were meager. In fact, the evidence is undisputed that the claimant devoted full time and considerable effort in connection with his real estate sales work. It has not been shown that claimant limited his income or declined appropriate employment that was more lucrative.
Finally, there is no suggestion by the E/C  and no evidence to support the same  that the claimant, or anyone on his behalf, "juggled" his commissions so as to artificially deflate his monthly earnings in order to take advantage of the statutory requirement that wage-loss claims be considered strictly on a monthly basis.
We conclude that competent substantial evidence supports the finding that the claimant's compensable physical limitation was a contributing causative factor in the wage loss awarded.
AFFIRMED.
ERVIN, C.J., and JOANOS, J., concur.
NOTES
[1] The claimant's average monthly wage when he was injured in 1979 was $1,335.79.
[2] In National Distillers, the employer and carrier defended the wage-loss claim in part on the ground that the claimant's reduction in earnings for December and January was not caused by his accident but was the result of the "nature of the real estate business," and contended that computation of wage loss on a strictly month-by-month basis, without consideration of a claimant's earnings over a longer period of time, may result in an inaccurate picture of claimant's "earning capacity." We held:

"While earning capacity was the critical issue in pre-1979 proceedings for the purpose of determining entitlement to permanent benefits greater than those provided for permanent impairment alone, the current statutes require computation of actual compensable wage loss each month, absent which a permanently partially disabled claimant will receive no benefits for that month regardless of the extent of physical impairment. Since the explicit terms of the statute require entitlement to be determined monthly, any proposals for alternative methods of computation to cover situations involving erratic income are more properly to be addressed to the legislature."
Id. at 355, 356.
[3] We noted at footnote 1 of National Distillers:

"Appellants have not raised, and we do not address, any issue regarding the 1983 amendment to § 440.15(3)(b)2, enacted after the final hearing below."