465 So.2d 1235 (1984)
MARTIN COUNTY SCHOOL BOARD and Gallagher Bassett Insurance Service, Appellants,
v.
Ray Lee McDANIEL, Appellee.
No. AW-274.
District Court of Appeal of Florida, First District.
September 13, 1984.
On Rehearing February 27, 1985.
Rehearing Denied April 22, 1985.
Micheal A. Edwards, West Palm Beach, for appellants.
Robert H. Schott of Gamba, Junod & Schott, Palm City, for appellee.
On Rehearing En Banc February 27, 1985.
NIMMONS, Judge.
Claimant hurt his back unloading furniture for his employer on September 4, 1981. The employer and servicing agent (E/S) appeal from an order of the deputy commissioner ordering wage loss benefits. We reverse because the deputy's finding of a permanent physical impairment is not supported by competent substantial evidence.
In Trindade v. Abbey Road Beef 'N Booze, 443 So.2d 1007, 1012 (Fla. 1st DCA 1983), we held:
[F]or purposes of determining eligibility for wage loss benefits in accordance with Section 440.15(3)(a) and (b), the existence and degree of permanent impairment resulting from injury shall be determined pursuant to the [AMA] Guides, unless such permanent impairment cannot reasonably be determined under the criteria utilized in the Guides, in which event such permanent impairment may be established under other generally accepted medical criteria for determining impairment.
And in Maggard v. Simpson Motors, 451 So.2d 529 (Fla. 1st DCA 1984), we stated:
Although we have held that medical testimony on the issue of permanent impairment need not necessarily be based on the AMA Guides, Trindade v. Abbey Road Beef'N Booze, 443 So.2d 1007 (Fla. 1st DCA 1983), we have not gone so far as to approve a permanent impairment rating based on the claimant's subjective complaints of chronic pain. We now hold that the existence and degree of permanent *1236 physical impairment must be proved by testimony based on the AMA Guides, unless such impairment cannot reasonably be determined under the criteria utilized in the Guides. In such cases, permanent impairment may be proved by testimony based on the Manual for Evaluation of Permanent Physical Impairment of the American Academy of Orthopaedic Surgeons, as authorized by Rule 38F-3.175, Florida Administrative Code, or by testimony based on "other generally accepted medical criteria for determining impairment."

Trindade, supra, at 1012.
The deputy commissioner found in his order that both Dr. DiBartolo, the primary treating orthopedic surgeon, and Dr. Murphy, another orthopedic surgeon who performed an independent medical examination on the claimant, based their opinions of a 5% permanent physical impairment upon the Orthopedic Surgeons Manual referred to above. However, the fact is that, although both doctors agreed on a diagnosis of "chronic lumbar strain" and that the permanent impairment they described was not covered under the AMA Guides, Dr. Murphy did not rely upon the Orthopedic Guides or any other such source for the determination of impairment. We summarize Dr. Murphy's deposition testimony and his written report received in evidence.
Murphy stated in his report that the claimant demonstrated no limitation of motion; that the x-rays showed no bony abnormality, no instability of the lumbar spine, and the disc spaces to be well preserved; and that lower leg neurological examination was within normal limits. Murphy's report recounted the history of the claimant's accident and claimant's continuing complaints of pain in the back and legs. The report stated that "no objective findings for [claimant's] complaints" were found and that Murphy felt claimant was "able to perform normal custodial duties with the limitation of weight lifting." Nevertheless, Murphy concluded in his report that he would go along with Dr. DiBartolo's opinion of a 5% permanent impairment rating and prognosis of continued pain. Murphy's deposition testimony included the following:
Q What would be the basis of the five percent rating?
A The basis would be of the basis of, of, on pain and suffering and subjective symptoms.
* * * * * *
But, using his symptom, you know, but using his symptomatic symptoms, his subjective symptoms, you know, I do feel that he does have, does have a disability, and therefore I think there, that there is other criteria under which you measure a disability. And I think that the patient has, you know, pain and discomfort from his, you know, has  I don't know whether its scarring of nerves or whatever, you know, in his low back, you know, that produces chronic strain symptoms. But that's the way he is, that's, you know, that's how I came up with this five percent disability.
Dr. Murphy had the benefit of the neurological report of Dr. Hooshmand, a neurologist whose report was received in evidence. The report states that Dr. Hooshmand's neurological examination revealed no abnormal findings. Hooshmand concluded:
Whatever injury the patient has had in the past has not left any residual, and the patient has reached maximum medical improvement with no residual of any disability. The main problem the patient has at this time is obesity, which would be helped by losing weight. Otherwise the patient has no other problems and should be able to go back to work with no limitations or restrictions.
Dr. DiBartolo, claimant's primary treating physician, testified on deposition that the only objective finding he was able to make regarding the symptoms of which the claimant continued to complain was "some muscle spasm on one or two occasions" in the early part of his treatment but that the muscle spasm had not continued. Dr. DiBartolo, therefore, conceded that his permanent impairment rating was based upon the claimant's subjective complaints of pain *1237 and not upon any objective findings.[1] However, Dr. DiBartolo testified that the claimant had a 5% permanent impairment under the Orthopedic Surgeons Manual (OSM).[2] It is abundantly clear from the record though that Dr. DiBartolo was misapplying the OSM. The following excerpts from the OSM, which was received in evidence before the deputy, will help to demonstrate the doctor's erroneous reliance upon that Manual:

 LOW LUMBAR
 1. Healed sprain, contusion
 A. No involuntary muscle spasm,
 subjective symptoms of pain not
 substantiated by demonstrable
 structural pathology 0[%]
 B. Persistent muscle spasm, rigidity
 and pain substantiated by demonstrable
 degenerative changes,
 moderate osteoarthritic lipping
 revealed by x-ray, combined trauma
 and pre-existing factors 10
 C. Same as (B) with more extensive
 osteoarthritic lipping 15
 D. Same as (B) with spondylolysis or
 spondylolisthesis Grade I or II,
 demonstrable by x-ray, without
 surgery, combined trauma and
 pre-existing anomaly 20
 E. Same as (D) with Grade III or IV
 spondylolisthesis, persistent pain,
 without fusion, aggravated by
 trauma 35
 F. Same as (b) or (c) with fusion
 laminectomy, pain moderate 25
 2. Fracture
 * * * * * *
 3. Neurogenic Low Back Pain  Disc Injury
 A. Periodic acute episodes with
 acute pain and persistent body
 list, tests for sciatic pain positive,
 temporary recovery 5 to 8 weeks 5
 B. Surgical excision of disc, no fusion,
 good results, no persistent
 sciatic pain 10
 C. Surgical excision of disc, no fusion,
 moderate persistent pain
 and stiffness aggravated by
 heavy lifting with necessary modification
 of activities 20
 D. Surgical excision of disc with fusion,
 activities of lifting moderately
 modified 15
 E. Surgical excision of disc with fusion,
 persistent pain and stiffness
 aggravated by heavy lifting, necessitating
 modification of all activities
 requiring heavy lifting 25

Dr. DiBartolo's testimony shows how he misapplied the OSM:
Q [Y]ou felt he had a five percent total body disability as a result of the chronic low back syndrome and would require only aspirin to relieve the pain. The rating, the five percent rating, doctor, what was that based on?
A. It is based on my evaluation of the patient and with reference to the [Orthopedic Surgeons Manual]. And the section that was referred to was the last page of the manual where they mention that a person with a chronic back injury who is required to in some way alter the, his activities because of the back problem * * * * What I was looking at, this paragraph [3]C refers  I took a section of that, it said  this particular problem deals with excision of a disc, I'm sorry  yes, excision of a disc, but the second part is moderate persistent pain and stiffness necessitating modification of activities. Of course, they give a twenty percent disability. What I considered as part of that was that the patient had no excision of a disc, but that he had moderately persistent pain and stiffness, and it was aggravated by heavy lifting and necessitated modification of activities. So I felt as though this was close to the situation he had without the disc pathology.
*1238 Obviously, it was improper for the doctor to rely upon paragraph 3C inasmuch as the diagnosed condition was a chronic lumbar strain with only subjective complaints of pain which were not verified by any objective findings. As the doctor himself testified, the claimant had no surgical disc excision. The other portions of the OSM are reproduced above to demonstrate that none of the other specified categories is amenable to an interpretation which would support a finding of permanent impairment based upon the evidence summarized previously in this opinion.
Counsel for E/S, on cross-examination, also drew Dr. DiBartolo's attention to a section of the OSM which categorizes degrees of pain and suggests the manner in which pain should be considered as a contributing factor in determining permanent impairment. There are four gradations of pain: Grade I (Mild) to Grade IV (Very Severe). Grades I and II provide:
Grade I  Mild: When there is a firm conviction established through thorough observation and clinical tests that pain actually exists even though there may be no organic manifestations. Pain of this degree does not contribute to physical impairment.
Grade II  Moderate: When the examination reveals definite evidence of a pathological state of the involved structures that would reasonably produce the degree of pain indicated to be present. This degree of pain might require treatment and could be expected to contribute in a minor degree to permanent physical impairment.
Dr. DiBartolo said that he "would perhaps classify his pain as moderate rather than mild." However, it is apparent that lacking in this case is any "definite evidence of a pathological state of the involved structures that would reasonably produce the degree of pain indicated to be present," a criterion under that pain category.
Appellee suggests that Dr. DiBartolo's testimony, in which DiBartolo stated that, in rendering his opinion on permanent impairment, he was relying upon his experience as an orthopedic surgeon, was sufficient to sustain the deputy's finding of permanent impairment. After Dr. DiBartolo's deposition testimony that his opinion of permanent impairment was based upon his interpretation of the OSM, he responded to claimant's attorney's question as follows:
Q And in so rating, you utilized your experience as an orthopedic surgeon who's treated many bad backs?
A Yes.
Stripped of the erroneous reliance upon the OSM, such testimony, in our view, does not constitute "other generally accepted medical criteria" as contemplated in Trindade v. Abbey Road Beef 'N Booze, supra, and Maggard v. Simpson Motors, supra. See also Brandon v. Hillsborough County School Bd., 447 So.2d 982 (Fla. 1st DCA 1984) (J. Nimmons, specially concurring). Compare Florida Sheriff's Youth Fund v. Harrell, 438 So.2d 450 (Fla. 1st DCA 1983) (Orthopedic Surgeon's Manual relied upon  objective manifestations of impairment, recurrent spasm, noted). Our opinion should not be read as a holding that a physician's opinion must, in all instances, be predicated upon a generally accepted permanent impairment manual or guide. We simply hold that a doctor's bare opinion of permanent impairment under circumstances such as these where the opinion is based in part upon an erroneous interpretation of the OSM and in part upon unverified subjective complaints of pain does not constitute "other generally accepted medical criteria" as contemplated by the above authorities.
We have not ignored the testimony of the psychologist whose deposition was introduced at the hearing on behalf of the claimant. Assuming, without deciding, that Dr. Barthet's testimony would be competent, relevant and material on the issue of a permanent physical impairment, he admitted that there would need to be further testing of the claimant before he could give an opinion as to whether the claimant's condition was a "permanent problem."
*1239 In sum, there was no competent substantial evidence to support the deputy's finding of a permanent physical impairment. The order awarding wage loss benefits must therefore be reversed. In view of the resolution of the above issue in appellant's favor, we need not address the appellant's other point or appellee's point on cross-appeal.
Reversed.
JOANOS, J., concurs.
ERVIN, C.J., dissents.
ERVIN, Chief Judge, dissenting.
I fear that the majority's opinion now returns us to the pre-Trindade (Trindade v. Abbey Road Beef'N Booze, 443 So.2d 1007 (Fla. 1st DCA 1981)) cases, precluding an award of wage-loss benefits, where a finding of permanency was not based upon some generally accepted medical schedule, such as the AMA Guides or the Orthopedic Surgeons Manual (OSM). Although Dr. DiBartolo's rating erroneously took into account a certain subsection of the OSM pertaining to surgical excision of discs, nevertheless the deputy commissioner found that Dr. DiBartolo had based his 5% permanent partial impairment rating not only on the OSM but also on his own experience as the primary treating orthopedic surgeon. The physician's expertise in his specialized field of medicine was stipulated to by both counsel and was not made an issue below or on appeal. Dr. DiBartolo specifically testified that he had "utilized [his own] experience as an orthopedic surgeon who [has] treated many bad backs... ."
He also based his rating upon the patient's moderate gradation of pain as recognized in the OSM. The majority, ante 1238, rejects reliance upon Grade II (moderate pain) as a factor in determining permanent impairment and apparently substitutes its own opinion for that of the deputy and that of the physician, holding that there was no "definite evidence of a pathological state of the involved structures that would reasonably produce the degree of pain indicated to be present ..." as required by Grade II. The manual is itself silent as to the type of "definite evidence" necessary to establish permanency, but I would suggest that such evidence does not necessarily preclude the physician's trained observations of a patient, who  as here  had experienced numbness in his left arm, occasional headaches, stiffness in his back, radiation of symptoms into the left leg, pain in bending forward, difficulty in straightening his back after sitting in a flexed position, and occasional muscle spasms in the low back area. I am not prepared to say, as does the majority, that this type of evidence is not the type that an orthopedist who has treated numerous back injuries could not properly take into account in making his evaluation.
The majority quotes this court's en banc opinion in Trindade for the rule that "permanent impairment may be established under other generally accepted medical criteria for determining impairment... ." when the Guides are not applicable. 443 So.2d at 1012. What type of medical criteria does Trindade refer to? On the specific facts before it, it approved a permanency rating based on the American Academy of Orthopedic Surgery Guides. Trindade certainly does not limit the term "generally accepted medical criteria" to generally accepted medical schedules. It cited with approval this court's prior opinions in Rhaney v. Dobbs House, Inc., 415 So.2d 1277 (Fla. 1st DCA 1982); Quality Petroleum Corporation v. MIHM, 424 So.2d 112 (Fla. 1st DCA 1982), and Florida Sheriffs Youth Fund v. Harrell, 438 So.2d 450 (Fla. 1st DCA 1983), which had allowed proof of permanent impairment to be established on evidence other than medical schedules exclusively.
For example, we said in Rhaney v. Dobbs House, Inc.,: "Under such circumstances the permanent impairment can be proved by qualified expert testimony based on the training, experience, and expertise of the witness or on other accepted medical guides of schedule prepared by specialists groups or associations... ." 415 So.2d at *1240 1279-80 (e.s.). The Rhaney rule was followed in Quality Petroleum Corp. v. MIHM, wherein the attending orthopedic surgeon had based his 10% permanent partial impairment rating of claimant's lower right extremity upon his own opinion to "a reasonable medical probability", but did not use the AMA Guides to permanent impairment, or for that matter any other schedules of impairment. In sustaining the deputy's finding of a 10% impairment, we stated: "Where the uncontradicted sworn testimony establishes that an injured employee has suffered permanent physical impairment, but that impairment is not addressed by the American Medical Association's Guides, it is not error for the deputy to rely on medical testimony of permanent impairment based upon other generally accepted medical standards." 424 So.2d at 113-14 (e.s.). The only "generally accepted medical standard" apparent from the facts recited in MIHM was the physician's own expert opinion testimony. Trindade specifically quoted with approval the above quoted portion of the MIHM opinion, authorizing reliance on "`other generally accepted medical standards.'" 443 So.2d at 1011.
In Florida Sheriff's Youth Fund v. Harrell, this court, speaking through Judge Nimmons, upheld a permanent impairment rating based upon an orthopedic surgeon's "own experience and on disability ratings derived from guides issued by the American Academy of Orthopedic Surgeons." 438 So.2d at 451 (e.s.) There we stated "that it was not error for the deputy to rely upon competent medical testimony of permanent impairment based upon other generally accepted medical standards," particularly when the particular injury was not covered in the Guides. Id. at 452.
In that Trindade has approved the holdings in these cases, while disapproving those in Mathis v. Kelly Construction Company, 417 So.2d 740 (Fla. 1st DCA 1982), and other opinions of this court, indicating that the Guides only may be used to determine the existence or degree of impairment, Trindade must be said, under the circumstances, to authorize as "generally accepted medical criteria" a physician's opinion testimony based on his training, experience or expertise.
In my view there was clearly competent and substantial evidence for the deputy to find that the claimant had been permanently, partially impaired. I would therefore uphold the order in its entirety.

ON REHEARING EN BANC
WENTWORTH, Judge.
Upon motion by a member of the court during pendency of appellee's motion for rehearing and for rehearing en banc, a majority of the court has determined to grant rehearing en banc pursuant to Fla.R. App.P. 9.331(c)(1).[1] We affirm the challenged order of the deputy commissioner awarding wage loss benefits from March 14 through June 30, 1983, during a period when claimant attempted unsuccessfully to work in a sheltered employment. The order denied benefits for July and August for insufficient job search.
Our concern in this case, as set out in both the panel opinion and dissent thereto, is with application of the evidentiary standards stated in recent opinions governing proof of the existence of a permanent impairment required for award of wage loss benefits. See Trindade v. Abbey Road Beef 'N Booze, 443 So.2d 1007 (Fla. 1st DCA 1983); Florida Sheriffs Youth Fund v. Harrell, 438 So.2d 450 (Fla. 1st DCA 1983); Quality Petroleum Corp. v. MIHM, 424 So.2d 112 (Fla. 1st DCA 1982); and Rhaney v. Dobbs House, Inc., 415 So.2d 1277 (Fla. 1st DCA 1982). Those opinions reflect a clear consensus that a physician's qualified expert opinion of permanent impairment may in some circumstances suffice without reliance on a manual or guide, *1241 although application of a prescribed guide remains obligatory to the extent feasible. With or without a guide, the statute requires that impairment shall be based on "medically demonstrable" findings and "generally accepted medical standards." § 440.15(3)(a)3, Florida Statutes.
The question, then, is whether the doctors' opinions of permanent impairment, on which the deputy in this case relied, met those standards. We do not, however, have before us any question as to whether the deputy or the medical witnesses accurately measured the degree of permanent impairment at 5%, but are required only to determine whether any competent and substantial evidence[2] supports the deputy's finding that claimant has some permanent impairment from the accident, in order to meet the threshold requirement for wage loss benefits.[3] Because appellant contends that the doctors' (and deputy's) opinions rest solely on unverified subjective complaints, and because the uniformity of our decisions may be determined only by some comparison of their evidentiary predicates, we must unfortunately restate essential portions of the record facts already referenced in the panel opinions.
Dr. DiBartolo, an orthopedic surgeon, treated claimant continuously from a time shortly after the September 1981 accident through the stipulated date of maximum medical improvement in February 1982, and the hearing in September 1983. As to claimant's physical activity and work limitations from the injury after maximum medical improvement he said:
I have placed the same restrictions on him on several occasions. I believe they're permanent... . There were four ... The patient should avoid prolonged sitting in one position for more than thirty minutes. The second one is he should avoid prolonged driving for periods of greater than thirty minutes without the opportunity to stretch to relieve the spasm. The third restriction would be repetitive bending, which I believe is self-explanatory. And the fourth restriction, heavy lifting.
With respect to the three-month period for which partial wage loss was awarded, the doctor said:
His condition was unchanged... . He was responding favorably to the Norgesic Forte, which is a mild muscle relaxer... . His condition was well controlled with activity restrictions and the Norgesic Forte... . [e.s.]
Q. Doctor, do you know if these activity restrictions were  does your file reflect that they were delivered to the employer, either by you or Mr. McDaniel?
A. They were written down for the patient several times, and they're in my notes.
Q. He was aware of your restrictions that you placed on him?
A. Yes. They were written down for him but he can't read, so I don't know how this figures into this whole mess.
Consistent with the foregoing restrictions the doctor, on specific inquiry as to how he measured his 5% permanent impairment rating, said:
It is based on my evaluation of the patient and with reference to the Orthopedic Manual for Evaluating Permanent Partial Disability. And the section that was referred to was the last page of the manual... . [P]aragraph C refers ... deals with excision of a disc, ... but the *1242 second part is moderate persistent pain and stiffness necessitating modification of activities. Of course they give a twenty percent disability. What I considered as part of that was that the patient had no excision of a disc, but that he had moderately persistent pain and stiffness, and it was aggravated by heavy lifting and necessitated modification of activities. So I felt as though this was close to the situation he had without the disc pathology. Of course I only gave him a five percent disability, not a twenty percent disability because of the looser pathology that I believe he had. [e.s.]
This testimony clearly establishes the witness' awareness that his finding of permanent impairment was not in reliance upon the OSM rating but merely "with reference" to its methods for assessing low lumbar syndromes by taking into account pain which requires activity modification.[4] Counsel initiated a discussion of other OSM sections, incorporated in the record here, grading the contribution to permanent impairment ratings (1) from moderate pain as a subjective symptom, requiring "definite evidence of a pathological state of ... structures," and (2) from behavior patterns in relation to pain, which "contributes to rating of physical impairment only if it is expected to be permanent."[5] On inquiry as to the meaning of "definite evidence" the doctor conceded, on cursory reflection, "I believe ... [i]t would involve objective evidence" in order to apply that part of the manual's standards for rating pain. And as to objective findings to explain claimant's pain:
I found objective findings in the early part of the treatment that I don't believe were persistent. For example, he had some muscle spasm... . I think you could prove he had pain then, but we have treated him primarily with muscle relaxants and the spasm has not been a continuing problem.

Our inquiry here, as already noted, is not to determine whether the record supplies evidence of an OSM permanent impairment, but instead to determine whether the witness' reference to the manual upon inapposite facts rendered his opinion incompetent or, conversely, whether the doctor's opinions in their context are competent substantial evidence of the existence of some degree of permanent impairment in accordance with "generally accepted medical criteria." We conclude in the affirmative for many reasons, including the closely parallel record predicate outlined in the Harrell opinion, supra. In that case, as here, no prescribed rating guide could be exclusively employed and, based on experience and ratings "derived from" an OSM guide not analyzed by the court, the doctor opined permanent impairment because of recurring localized sacroiliac "discomfort ... aggravated by activity ... occasionally developing some spasm ... usually related to activity... . The situation ... represents an impairment of ... capability because of the sensitivity to stress, bending, lifting, prolonged sitting...." We find no material difference between that scenario and the present case where the initially recurrent symptoms were controlled (after maximum medical improvement) by continuing medication with an anti-spasmodic agent, activity restrictions, and use of a prescribed back brace. Obviously there cannot reasonably be any conclusive significance attached to the absence of objective *1243 signs which are prevented by medication prescribed for the specific purpose of preventing such manifestations, as for instance the medication in this case given to prevent acute spasm.
A compelling reason for concluding that the deputy's finding here is one resting on "medically demonstrable"[6] evidence, § 440.15(3)(a), Florida Statutes, and for concluding that the impairment opinion of the primary doctor is not one based on bare unverified subjective complaints, is the fact that the doctor monitored claimant's chronic complaints of pain, stiffness and other symptoms over an extended period of two years. His reports reflected an evaluation of the pattern of subjective symptoms (along with objective data in the early stages) in the context of a program of medication and activity testing as a foundation for his opinion of permanent impairment. He imposed permanent medical restrictions, which clearly impacted the industrial capability of this claimant, based on that period of medical supervision with all attendant opportunities for professional judgment. Common sense supports a distinction between the deputy's impairment finding here, based on that evidence, and one based on a bare conclusion solely from "claimant's subjective complaints" as rejected in Maggard v. Simpson Motors, 451 So.2d 529 (Fla. 1st DCA 1984).[7]
Upon the law and evidence heretofore detailed, and with the same concerns for constitutional boundaries expressed in Trindade, supra, 443 So.2d at 1012, we affirm the deputy's conclusion that the claimant carried his initial burden upon the threshold permanent impairment issue for wage loss purposes. Appellant's remaining issue, asserting voluntary limitation of income, does not in our opinion have merit for the reasons expressed by the order.[8] The cross appeal is also without merit.
Affirmed.
ERVIN, BOOTH, SMITH, SHIVERS, WIGGINTON, ZEHMER and BARFIELD, JJ., concur.
NIMMONS, J., dissents with written opinion in which MILLS, JOANOS and THOMPSON, JJ., concur.
NIMMONS, Judge, dissenting.
I dissent and would adhere to the panel's majority opinion.
In his opinion dissenting from the panel opinion, Judge Ervin referred to certain symptoms noted by Dr. DiBartolo. With the possible exception of muscle spasm, these symptoms were based upon the claimant's complaints as part of the history given early in the course of treatment. With respect to muscle spasm, I will assume, although the record is not entirely clear on the point, that the doctor was able to objectively detect spasm. However, no further objective manifestations of injury were noted after September 1981 notwithstanding the fact that the claimant was regularly seen thereafter by Dr. DiBartolo and was last seen as late as two weeks prior to the October 11, 1983, hearing date.
To the extent that there may have been some minimal objective symptoms early in the claimant's treatment, the fact is that the deputy commissioner placed no reliance upon any such symptoms but, instead, relied upon the doctors' opinions which, as *1244 the deputy noted, were based upon the claimant's subjective complaints.[1] The doctors' own testimony regarding permanent impairment does not depend upon or refer back to the symptoms noted two years earlier, apparently because such symptoms had long since subsided.
In my view, the en banc majority's opinion runs counter to this court's unanimous en banc opinion in Trindade v. Abbey Road Beef 'N Booze, 443 So.2d 1007 (Fla. 1st DCA 1983), and renders meaningless the standard of "other generally accepted medical criteria for determining impairment" which we approved in Trindade.
NOTES
[1] The deputy commissioner recognized in his order that there was an "absence of objective findings" and that the opinions of both doctors were based upon the claimant's subjective complaints.
[2] On September 29, 1983, the Department of Labor and Employment Security promulgated Rule 38F-3.175, Fla. Admin. Code, which adopted the OSM as the applicable guides when the injury is to the knee, hip, shoulder, or elbow and the resulting permanent condition is not a permanent impairment under the AMA Guides. Since the parties have not raised the question as to whether the OSM can now be used in workers' compensation proceedings with respect to back injuries and since we have concluded that the evidence does not support a finding of permanent impairment under the OSM, we deem it unnecessary to resolve that question.
[1] The standard in the rule for en banc review, requiring such consideration to be "necessary to maintain uniformity of decisions," has been expanded effective January 1, 1985, to extend to cases deemed to be of exceptional importance. Because a majority in the present case finds review necessary for decisional uniformity, the amendment need not be considered.
[2] We note the continued vitality of this standard established for review of deputies' orders for the same "reasons which gave rise to the rule that this Court should not substitute its judgment for that of the chancellor or jury and reverse the findings of facts made by either... . Even in cases which must be resolved upon a true appraisal of testimony of medical experts, the deputy commissioner's findings of facts should be upheld unless there is no competent, substantial evidence, which accords with logic and reason, to sustain them." U.S. Cas. Co. v. Maryland Cas. Co., 55 So.2d 741, 744-5 (Fla. 1951).
[3] Rich v. Com. Carrier Corp., 422 So.2d 1011 (Fla. 1st DCA 1982); Clay Hyder Trucking v. Persinger, 416 So.2d 900, 901 (Fla. 1st DCA 1982) (fn. 1); Tallahassee Memorial Regional Medical Center v. Snead, 400 So.2d 1016 (Fla. 1st DCA 1981).
[4] In emphasis of this distinction the doctor, on cross examination, said his rating was based on "my own interpretation" of the manual, utilizing his "experience as an orthopedic surgeon who's treated many bad backs." The manual's preface states it is "distributed as a guide with the clear understanding that the principles therein are subject to individual interpretation." It cautions, topic VI, that "the final rating of the disability should be the examining doctor's own personal opinion entirely. He may have consulted a rating guide of relative percentage of disability; he may have applied more than one rating formula; but in the end the rating should be the doctor's own personal opinion based on his own knowledge and experience... ."
[5] The latter section recognizes "the functions of accomplishing work may be completely inhibited because of suffering with pain without anatomic change."
[6] Cf., § 627.737(2)(b), Florida Statutes, prescribing a standard of proof, for actionable injury in a tort setting, as "permanent injury within a reasonable degree of medical probability."
[7] The physician there stated only an "assumption that [claimant] had aggravated" a degenerative back condition and found "just his chronic pain" and "gave him" an impairment rating.
[8] The deputy found:

Considering the fact that the claimant does have a long and steady work history, that two orthopedic surgeons have agreed that the claimant does have a permanent and chronic condition in his back as a result of his compensable injury, and the fact that the claimant did attempt to return to work at the lighter duty job, but was not physically able to continue with it, together with my observation of the claimant at the merits hearing, which observation convinces me that the claimant has not voluntarily limited his income by failing to continue with the job created for him by the employer herein.
[1] See footnote 1 of the panel's majority opinion.