ERVIN, Judge,
dissenting.
I dissent. The 33-year-old claimant, while employed as a carpenter, suffered a compensable injury in February 1981. Following claimant’s successful treatment at a pain clinic, his authorized physician recommended that he be discharged as “maximally improved” with a five-percent permanent impairment as of October 23, 1981. Claimant thereafter undertook efforts at rehabilitation, and the employer/carrier (e/c) voluntarily paid rehabilitative benefits, including tuition and all expenses for a year’s study at the commercial art department at Pensacola Junior College. During the summer of 1983, after completing his studies, claimant acquired work painting t-shirts and other merchandise on Pensacola Beach. This work was seasonal, with the peak periods of activity ending in fall. Claimant later unsuccessfully attempted to find regular full-time work as an artist for commercial art businesses in Pensacola.
Because claimant’s average weekly wage (AWW) during the fall and winter months following his accident was far less than the winter and spring months, he sought wage-loss for the former periods of time, specifically for the months of October-December *549 1984, and January-March 1985. The e/c controverted on the grounds, among others, that claimant had refused the e/c’s offer of regular jobs which it had found for him, had refused to accept any type of work other than in commercial art, and that claimant was not eligible for wage loss benefits since he had no permanent impairment under the AMA Guides.
The deputy, without addressing the question of whether the claimant had met the threshold requirement of establishing permanent impairment[1] pursuant to Section 440.15(3)(b)l, Florida Statutes, denied the claim on the ground that the claimant had failed to prove any connection between his injury and his reduced income during the winter months. Clearly the deputy’s refusal to decide the initial issue of whether claimant had sustained permanent impairment was error. Neither party argues that such issue was not ripe for determination. The case, then, should be remanded to the deputy to make this essential finding, cf. Florida Power & Light Co. v. Mulkerrin, 444 So.2d 583 (Fla. 1st DCA 1984) — unless, of course, the error can be deemed only harmless in light of the deputy’s explicit ruling on the issue now on review.
The deputy’s determination that no causal connection existed between the wage-loss suffered and claimant’s industrial accident was based upon his finding that claimant’s depressed income during the off-season months of the year was attributable solely to economic factors and not to the injury. In so holding, the deputy’s order overlooks a myriad number of cases from this court stating that if an employee is displaced from his employment due to a work-related injury and has instituted a good faith effort to find work within his capabilities, the burden then shifts to the employer to establish claimant’s voluntary limitation of income. See, e.g., Tampa Electric Co. v. Bradshaw, 477 So.2d 624 (Fla. 1st DCA 1985); City of Clermont v. Rumph, 450 So.2d 573 (Fla. 1st DCA 1984); D.L. Amici Co. v. Jackson, 444 So.2d 978 (Fla. 1st DCA 1983), rev. denied, 451 So.2d 848 (Fla.1984); D & R Builders, Inc. v. Quetglas, 449 So.2d 988 (Fla. 1st DCA 1984); Regency Inn v. Johnson, 422 So.2d 870 (Fla. 1st DCA 1982).
More specifically, as applied to the facts at bar, the deputy erroneously refused to apply National Distillers v. Guthrie, 443 So.2d 354 (Fla. 1st DCA 1983) (Guthrie I); National Distillers v. Guthrie, 473 So.2d 806 (Fla. 1st DCA 1985) (Guthrie II), and Carpenters R.V. Service v. Eckert, 455 So.2d 590 (Fla. 1st DCA 1984) to the issue on review, it being his opinion that the rule announced in the above cases had no relevancy to the instant case, because the only reason claimant had failed to make comparable income during the winter months to that made by him during spring and summer was attributable to his voluntary decision to work year-round as a beach artist. Hence, the deputy concluded, his wage-loss during the winter season had nothing to do with his industrial injury.
In all due respect, the deputy’s conclusion that claimant’s wage-loss during the winter months had no causal relationship to his industrial injury is a misreading of the Guthrie and Carpenters rule. In the latter case, the e/c made the same argument, as here, that claimant had not accepted the employer’s offer of other jobs, which, it was contended, were within the employee’s work limitations. The e/c further argued in Carpenters that the claimant was not entitled to wage-loss sustained during his work in his rehabilitated position as a real *550 estate salesman, paid on a commission basis, contending — as does appellant at bar— that the amounts claimed due were attributable to the fluctuating nature of the business that claimant had of his own volition decided to undertake. In rejecting this argument, this court in Carpenters stated:
We hold that there was competent substantial evidence in the instant case indicating that claimant’s compensable physical limitation was a contributing causative factor in the wage loss claimed. The claimant’s present employment in the real estate business, instead of the kind of regular income job he had with the employer, is attributable to his disability. It was established by the previous 1980 unappealed order that the claimant was, by reason of his permanent impairment, unable to continue performing the kind of work for which he had training and experience, that it was necessary for him to submit to education and training in another field of endeavor and that real estate sales was a reasonable avenue for the claimant to pursue. And the 1980 order, therefore, required the E/C to reimburse the claimant for his expenses in obtaining his real estate license. Further, the testimony clearly shows that the claimant has conscientiously and enthusiastically pursued his new vocation over the past several years and his earnings therefrom have steadily increased as a consequence of his efforts.
455 So.2d at 592-93.
Similarly, in the case at bar, the e/c voluntarily assisted claimant’s efforts at rehabilitating himself as a commercial artist by providing him with tuition and all expenses for a year’s study at the commercial art department of Pensacola Junior College. Once he was rehabilitated to his new vocation, claimant should have been under no obligation thereafter to test his physical capacity to undertake work in an altogether different field. The e/c’s offers of other employment, moreover, were limited to his performing jobs as a back hoe operator and as an auto parts salesman, both at lesser rates of pay than that he had received as a carpenter before his work-related injury. Claimant declined the jobs for the reasons of both the lesser amounts of pay and his doubts that he was physically capable of handling them. Claimant’s doubts relating to his physical inability are supported by his doctor’s recommendation that he not engage in occupations involving lifting of more than 35-40 pounds, nor bending, stooping, etc.
The deputy’s implicit finding that claimant has voluntarily limited his income by continuing his work as a beach artist is not supported by the evidence. Here, as in Guthrie, claimant’s industrial injury caused his displacement from his former employment and left him incapable of performing his prior job. Here, as in Guthrie, claimant’s acquisition of his new vocation, with his employer’s active assistance, was directly attributable to his compensable injury. Guthrie instructs that once a claimant, as here, establishes that his rehabilitated position was caused by the industrial injury, the claimant is not then required to establish by other evidence that the loss of income in any given month “was the direct result of his physical disabilities so long as he continued to diligently pursue his new occupation_” Guthrie II, 473 So.2d at 808 (e.s.).
The e/c is hardly able to make any serious argument that claimant failed to pursue his present vocation with diligence. In fact, during the summer months, claimant’s occupation as a commercial artist netted him a far greater income than that he had received during comparable months before his injury. Additionally, claimant had attempted unsuccessfully to obtain full-time work in his new field with nearly all of the design, advertising, or sign companies in the Pensacola area. It would be a cruel charade, once an injured worker has successfully undertaken rehabilitation to a new vocation with his employer’s consent, to require him next to undergo a work search in an altogether different field as a precondition to his entitlement to wage-loss. Such a requirement would undercut the very purpose of rehabilitation: To provide the worker with “suitable gainful em *551 ployment ... which offers an opportunity to restore the individual as soon as practicable and as nearly as possible to his average weekly earnings at the time of injury.” Section 440.49(l)(a), Florida Statutes. Cf Underwood v. Terminal-Frouge Builders, 128 So.2d 605, 608 (Fla.1961) (it would “violate the spirit and intent of the Workmen’s Compensation Law [to penalize] a claimant for attempting through the furtherance of his education to limit the effect of his disability.”). Guthrie did not impose that burden on the injured employee, and neither should this case.
I would therefore reverse the denial of compensation as to the ground stated by the deputy, and remand the cause with instructions that the deputy rule on the unanswered question of whether the claimant has suffered permanent impairment.

. The attending physician, in reaching his assessment of a five-percent permanency rating, did not rely on the AMA Guides, stating that although they covered the type of injury that claimant had sustained, he nevertheless based his impairment rating on his own observations of claimant and the personal history recounted to him by claimant. Although the deputy, as stated, declined to determine whether claimant had sustained a permanent impairment as a result of the industrial accident, his order expressed doubts that claimant’s proof met the statutory threshold. As I have stated in the text of this opinion, the deputy should be given the initial opportunity to rule on this issue, but I would be very surprised, after what we have stated in Martin County School Board v. McDaniel, 465 So.2d 1235 (Fla. 1st DCA 1984) (on rehearing en banc, 1985), for the deputy's doubts to be a later basis for denial of the claim.