ERVIN, Judge,
dissenting.
While ascribing to the rule that a judge of compensation claims (JCC) has the discretionary right to accept the testimony of one physician over that of another, I consider it necessary to point out that this rule should be tempered by the recognition that the exercise of such discretion must be “solidly rooted in a firm foundation of fact to support the opinion of the expert upon whom the Deputy chooses to rely.” Geiger Distribs., Inc. v. Snow, 186 So.2d 507, 509 (Fla.1966) (emphasis added). Moreover, when, as here, the JCC’s findings on permanency vel non depend entirely on medical evidence contained in physicians’ reports and deposition testimony, the vantage point of a reviewing court is not inferior to that of the trier of fact in interpreting such evidence. McCabe v. Bechtel Power Corp., 510 So.2d 1056 (Fla. 1st DCA 1987).
It appears to me that a limited form of de novo review by this court is particularly appropriate in view of the substantial discrepancies in the medical testimony of claimant’s primary treating physician, Dr. Andrew Greene, whose opinion the JCC approved over those of other physicians to the contrary, in deciding that claimant had reached maximum medical improvement (MMI) on March 29, 1989, with no permanent impairment (PI). Dr. Greene testified that he first treated the claimant on October 8, 1987, for injuries she received in an industrial accident which occurred on September 26, 1987. Following his examination, which included a range of motion test, the results of which showed limitations in claimant’s range of movements, Dr. Greene prescribed several medications for pain, including Flexeril, a drug commonly used to relieve muscle spasms, although he stated that he did not then or at any time thereafter observe muscle spasms. On January 7, 1988, he released claimant for light-duty sedentary work with restrictions, which included no heavy lifting, bending, stooping, or climbing. When he determined claimant had reached MMI on March 29, 1989, with no PI, he inconsistently continued to impose restrictions against heavy lifting or work that would require her to look upward.
Clearly a JCC’s finding that a claimant has achieved MMI with no PI based upon a medical opinion to that effect cannot be sustained when the doctor also imposes physical restrictions. See Jackson v. Publix Supermarkets, Inc., 520 So.2d 50, 51 (Fla. 1st DCA 1987). Although it is true that Dr. Greene later, in October 1989, decided that claimant could work without restrictions, this opinion was undermined by his testimony that when he saw the claimant in January 1990 her condition was essentially the same as it was the preceding March, when, as stated, restrictions remained in force. Indeed, he continued to prescribe Flexeril for claimant as late as April 1990.
In resting her findings upon Dr. Greene’s testimony, the JCC related that Dr. Greene had testified that the length of time that claimant’s subjective complaints of pain persisted caused him to consider the complaints less credible. Moreover, the JCC did not find it inconsistent for Dr. Greene to continue prescribing pain medications as treatment for the claimant’s complaints, because she accepted his testimony that he was simply trying to help his patient in any way that he considered reasonably possible.
Although the inconsistency of Dr. Greene continuing to prescribe Flexeril, despite his alleged lack of objective findings of muscle spasms even after assessing *332 MMI, may be explained by the reason that he was treating claimant’s subjective symptoms only, the fact remains that Dr. Greene performed no physical examination upon claimant after July 1988, yet nonetheless determined claimant was at MMI as of March 1989, based solely upon his observations of her. Because Dr. Greene failed to conduct an examination as of the date he determined claimant was at MMI, or the later date when he removed all work restrictions, any opinion by him as to claimant’s medical condition is, in my judgment, seriously flawed and is without the foundation required by Geiger Distributors.
Dr. Greene’s questionable medical opinion should be compared with that of Dr. Leonard Holtzman, a chiropractor, who, at the employer/carrier’s (E/C’s) request, performed an independent medical examination on the claimant on June 5, 1990, shortly before the hearing conducted on the claim. His examination included a range of motion study, which revealed minimum to moderate muscle spasms in the right neck and upper trapezius muscles. He considered this to be an objective medical finding indicative of a permanent condition. See Martin County Sch. Bd. v. McDaniel, 465 So.2d 1235 (Fla. 1st DCA 1984) (en banc), appeal & cross-appeal dismissed, 478 So.2d 54 (Fla.1985); Florida Sheriffs Youth Fund v. Harrell, 438 So.2d 450 (Fla. 1st DCA 1983). Dr. Holtzman found that claimant had suffered a soft-tissue injury, which he described as chronic myofascial pain syndrome, with a possible herniated cervical disc. While agreeing with Dr. Greene that claimant had reached MMI, he assigned a five percent PI rating based upon his objective findings.
Despite the fact that Dr. Holtzman’s opinion of PI was based upon a far more recent medical examination than Dr. Greene’s, the JCC nonetheless rejected his opinion, explaining that claimant’s subjective complaints were inconsistent with Dr. Holtzman’s objective findings, and that Dr. Holtzman had failed to assign work restrictions. The JCC’s rejection overlooks evidence clearly disclosing that Dr. Holtzman made objective findings which supported a PI rating of five percent. Moreover, notwithstanding his failure to assign explicit work restrictions, Dr. Holtzman explained that he ordinarily does not impose limitations because of the nature of the injury— soft tissue injury — rather he customarily leaves such restrictions to the patient.
Claimant was also examined by Dr. Leonard Greenbaum, a chiropractor, who performed a functional capacity evaluation[2] on claimant on July 21, 1988. Although Dr. Greenbaum did not determine either MMI or PI, because he did not examine claimant for diagnostic purposes, he did state that claimant appeared to be suffering from post-traumatic myofascitis, a soft-tissue injury, a condition which, in his judgment, would last “quite a long time.”
The JCC nonetheless discounted Dr. Greenbaum’s testimony, stating that she did not consider his testimony to be inconsistent with Dr. Greene’s ultimate determination of no permanency and no work restrictions. Apparently the JCC overlooked Dr. Greenbaum’s statement that claimant’s condition, post-traumatic myofascitis, is usually around for quite a long time, as well as the fact that myofascitis was also diagnosed later by Dr. Holtzman who, as stated, assigned claimant a five percent PI rating.
Finally, the deposition testimony of Dr. Hooshang Hooshmand, a neurologist, was considered by the JCC and rejected as well. He testified that when he first saw claimant on February 2, 1988, he observed muscle spasms in the right sternocleidomastoid muscle. A thermogram showed moderate temperature increase over the muscle, indicating damage which causes spasms and increased temperature. Additionally, an EMG revealed a moderate spasm of the neck muscles on the right side. Dr. Hoosh- *333 mand, as had Dr. Holtzman, diagnosed a soft-tissue injury to the muscles to that portion of the neck, post-traumatic depression, and atherogenic depression and perpetuation of pain. On February 25, 1988, Dr. Hooshmand opined that claimant had reached MMI with a five percent PI rating pursuant to the AMA Guides. He moreover restricted claimant from heavy labor, lifting over 25 pounds, long distance driving, and repetitive overhead looking.
In discarding Dr. Hooshmand’s five percent PI rating, the JCC stated that Dr. Hooshmand failed to explain how he arrived at this rating. Nevertheless, the record discloses that Dr. Hooshmand examined claimant on six occasions between February 1988 and April 1990, and found the presence of muscle spasms on all six occasions. Moreover, his findings were confirmed by and consistent with objective studies made in two EMGs and one thermo-gram. The JCC also pointed out that Dr. Hooshmand conceded during his treatment that he had never obtained any of claimant’s records from any of the other physicians, particularly those of Dr. Greene, the treating orthopedic physician. Nevertheless, Dr. Hooshmand’s testimony was clear that he had performed his own examination and tests; as a result, he was not required to rely upon the findings of others. See Rodriguez v. Howard Indus., 588 So.2d 646, 649 (Fla. 1st DCA 1991).
Finally, the JCC’s order recited that Dr. Hooshmand appeared to be more of an advocate on behalf of the claimant rather than an objective, unbiased witness, in that he was extremely critical of Dr. Greene’s continued prescription of what Dr. Hoosh-mand considered to be highly addictive and unnecessary drugs. Although it is true that a certain portion of Dr. Hooshmand’s deposition testimony may be considered argumentative insofar as his criticism of the treatment recommended by Dr. Greene, this portion of Dr. Hooshmand’s testimony was generally presented during his cross-examination by the E/C’s attorney and followed his earlier testimony in which he had assigned a permanency rating. Hence, Dr. Hooshmand’s opinion regarding permanency does not appear to have been influenced by his disapproval of Dr. Greene’s prescribed regimen.
In considering the internally inconsistent testimony of Dr. Greene, and comparing it with the conflicting medical testimony of the other physicians, I consider that the instant case falls within the rule recognized in Tucker v. Agrico Chemical Co., 476 So.2d 729, 731 (Fla. 1st DCA 1985), stating: “While the deputy’s election to rely on one doctor in conflict with all other medical testimony before him would ordinarily be within his prerogatives, his reliance must of course be warranted by the substance of that medical testimony, and not merely by the doctor’s conclusion against an increased rating....” (Emphasis added; footnote omitted.) I acknowledge that we have held that if the reason for a JCC’s rejection of the testimony of one or more doctors is not apparent in the record, or if it appears that the JCC overlooked or ignored evidence in the record, the case must be reversed and remanded for additional findings. See Ate Fixture Fab v. Wagner, 559 So.2d 635 (Fla. 1st DCA 1990); Yeargin Constr. Co. v. Hutchinson, 547 So.2d 1269 (Fla. 1st DCA 1989); Allied Parcel Delivery v. Dixon, 466 So.2d 439 (Fla. 1st DCA 1985). Nevertheless, because this court’s vantage point is not inferior to that of the JCC in interpreting the medical testimony submitted via deposition, and because the JCC’s acceptance of one physician’s testimony over that of the others is not, in my judgment, solidly rooted in a firm foundation of fact, I see no need to remand for additional findings. Rather, I would REVERSE outright the JCC’s determination that claimant has reached MMI with no PI rating, and REMAND the case with directions to assign a PI rating and make a determination of claimant’s entitlement to permanent disability benefits.

. Dr. Greenbaum explained that this is a test designed to determine how much the subject can lift, pull, or push in different positions. It involves three different parts: a range of motion and gross strength examination, a static strength test, in which the subject performs isometric strength tests, and a maximum effort dynamics test, wherein the subject moves weighted objects while in different positions.